**In the MATTER OF John A. MAURICE, Debtor–Appellant.**

**No. 92–3775.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 2, 1993.

Decided April 13, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied May 31, 1994.

---

Gerald M. Hunter, Oglesby, IL (argued), for John F. Dornik.

Kenneth A. Kozel, LaSalle, IL (argued), for John A. Maurice.

Before WOOD, JR., ESCHBACH, and ROVNER, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This appeal concerns a $20,000 debt owed by debtor-appellant John A. Maurice to appellee John F. Dornik. The bankruptcy court held that the debt was nondischargeable in bankruptcy under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). The district court affirmed the bankruptcy court's decision and the debtor appealed. We find no merit to Maurice's claims that the bankruptcy court committed many procedural and substantive errors, and affirm the judgment of the district court.

## I. BACKGROUND

Back in 1978, Dornik purchased an interest in Maurice's automobile body-shop business for $20,000. This partnership survived for four years until August, 1982, when Dornik sued Maurice in the Circuit Court of LaSalle County, Illinois for dissolution of a partnership and to recover money paid into the partnership. In 1987 the state trial court awarded a judgment against Maurice and in favor of Dornik. The court found in relevant part that Maurice deposited Dornik's $20,000 capital contribution in his personal bank account and used the money to pay personal expenses. The circuit court also ordered a reduction in the judgment by reason of a capital contribution to the partnership made by Maurice. Both parties appealed. In November 1988, the Illinois Appellate Court for the Third District affirmed most of the circuit court's ruling, but reversed the reduction, thereby imposing a $20,000 judgment against Maurice. The Illinois Supreme Court denied Maurice's petition for leave to appeal. Maurice then declared bankruptcy under Chapter 13 on July 20, 1989, although later converted to Chapter 7, forcing Dornik to become involved in bankruptcy proceedings to try and recover the judgment amount.

In the course of the Chapter 7 bankruptcy proceedings, the bankruptcy judge set February 26, 1990, as the last date for filing dischargeability complaints under 11 U.S.C. § 523. Dornik filed a timely adversary proceeding against Maurice on February 15, 1990. As part of his claim, Dornik argued that the $20,000 debt was not dischargeable because Maurice was guilty of fraudulent misrepresentation under 11 U.S.C. § 523(a)(2)(A) and willful and malicious conversion under 11 U.S.C. § 523(a)(6).

On January 17, 1991, Judge Coar entered a pre-hearing order and scheduled a hearing in the case for May 6, 1991. This hearing was rescheduled for May 13, 1991, and a second but identical pre-hearing order was entered on April 1, 1991. Maurice later moved the bankruptcy court for a continuance, Dornik did not object, and Judge Coar reset the hearing for August 26, 1991. On August 13, 1991, Maurice again asked the bankruptcy court for a continuance, but Judge Coar denied this motion.

The next day Dornik served Maurice with documents and exhibits that included the motion for a continuance and a motion for summary judgment. When the date for the hearing eventually arrived, Dornik filed his motion for summary judgment, and Maurice

responded by filing a motion for sanctions based on Dornik's failure to comply with the pre-hearing order of April 1, 1991. Judge Coar denied both motions and postponed the hearing until December 9, 1991, later rescheduled for December 16, 1991. When Maurice did not appear on December 16, the hearing was rescheduled for March 6, 1992.

By the time 1992 arrived, the case had been reassigned to Judge John H. Squires. As his first order of business, Judge Squires held a hearing on February 14 at which time he confirmed the March 6 trial date and in open court advised that Judge Coar's pre-hearing order would apply. This statement, however, was not reduced to writing and neither Maurice nor his attorney were present at the hearing.

When the time for the hearing arrived, Maurice had not complied with the terms of Judge Coar's April 1, 1991 pre-hearing order and Dornik moved the court for sanctions. Judge Squires granted this motion and refused to allow Maurice to admit exhibits or introduce witnesses that should have been previously identified under terms of the pre-hearing order. After conducting a brief hearing and allowing the parties to submit post-hearing memoranda, the bankruptcy court determined that the $20,000 debt was nondischargeable and awarded prejudgment and post-judgment interest. The district court later affirmed the bankruptcy court's decision.

## II. ANALYSIS

Using the "everything but the kitchen sink" philosophy, Maurice alleges numerous errors made by the bankruptcy court. Many of these arguments are meritless and we discuss only the most substantive claims.

### A. Admission to Federal Trial Bar

Maurice first contends that the bankruptcy court erred by allowing Dornik's attorney to try this case when he had not been admitted to the federal trial bar in the Northern District of Illinois. The bankruptcy court for the Northern District of Illinois has adopted Rule 3.10 of the General Rules and Civil Rules of the United States District Court for the Northern District of Illinois. Rule 3.10 states:

> only members in good standing of the bar of this Court may enter appearance of parties, file pleadings, motions or other documents, sign stipulations or receive payments upon judgments, decrees or orders. Attorneys admitted to the trial bar may appear alone in all matters. Attorneys admitted to the bar, but not the trial bar, may appear in association with a member of the trial bar in all matters and may appear alone except as otherwise provided by this rule.

Maurice argues that because Dornik's attorney was not a member of the trial bar, the judgment should be reversed as a sanction for disregarding the rule even though he has not demonstrated any prejudice against him. We disagree.

The District Court for the Northern District of Illinois created the trial bar and its requirements, as stated in local Rules 3.00 and 3.10, in order to improve the quality of advocacy in our trial courts by ensuring that trial attorneys have a certain amount of trial experience.[1] *See Brown v. McGarr,* 774 F.2d 777, 781 (7th Cir.1985). Membership, however, is not always required for Rule 3.10D allows a judge to waive the requirement.[2]

---

**1.** Local Rule 3.00 states the qualifications required for admission to the general bar and also the trial bar of the Northern District of Illinois. Membership in the general bar simply requires membership in good standing in the bar of the highest court of any state of the United States or the District of Columbia. To become a member of the trial bar an attorney must have four "qualifying units" of trial type experience. N.D.Ill. Gen.R. 3.00C(7). The subsections of Rule 3.00 further identify the types of experience that satisfy this requirement.

**2.** N.D.Ill.Gen.R. 3.10D states:

> A judge may grant permission in a civil or criminal proceeding pending before him/her to an attorney admitted to the bar, but not to the trial bar, to appear alone in any aspect of the matter only upon written request by the client and a showing that the interests of justice are best served by waiving the experience requirements otherwise required by the Rules. Such permission shall apply only to the proceedings in which it was granted. Granting of such permission shall be limited to exceptional circumstances.

■ Here Dornik's attorney, Mr. Hunter, was a member of the bar of the Northern District, but not a member of the trial bar. The record is unclear as to whether Mr. Hunter possessed enough trial experience to become a member of the trial bar. Maurice raised this issue in a brief filed *after* the March 6 hearing but before judgment. Raising the issue after the judge has conducted the hearing and received all of the evidence is too late; failing to timely object to the alleged error waives any right to later appeal the issue. *See In re BNT Terminals,* 125 B.R. 963, 977 (Bankr.N.D.Ill.1991). Had the issue been raised in the beginning of trial, the requirement could have been waived or the hearing postponed until Mr. Hunter could obtain membership in the trial bar. To allow such a late objection to result in reversal of the judgment would unnecessarily waste valuable judicial time and resources.

## B. Sanctions

Maurice presents several different arguments regarding the sanctions imposed by Judge Squires when the case finally was tried in the bankruptcy court on March 6, 1992. The bankruptcy court granted Dornik's motion for sanctions for Maurice's failure to comply with Judge Coar's April 1, 1991 pre-hearing order. Judge Squires barred Maurice from objecting to Dornik's exhibits, calling Dornik as a witness, and from introducing exhibits of his own. We review the lower court's imposition of sanctions for an abuse of discretion. *Parker v. Freightliner Corp.,* 940 F.2d 1019, 1024 (7th Cir.1991); *Tamari v. Bache & Co. (Lebanon) S.A.L.,* 729 F.2d 469, 472 (7th Cir.1984).

### 1. Were Sanctions Justified?

■ First, Maurice complains that he did not receive notice that Judge Squires was enforcing the pre-hearing order entered by Judge Coar on April 1, 1991. After the case was transferred to Judge Squires in the beginning of 1992, Judge Squires set the case for a February 14, 1992 hearing on Dornik's motion for judgment on the pleadings. Mr. Kozel failed to attend this hearing, although he did file a written motion for a continuance. Judge Squires denied both motions. During

the hearing Judge Squires stated that Judge Coar's April 1, 1991 pre-hearing order would apply to the trial to be held on March 6. A minute order was issued indicating the trial date, but the order did not mention the pre-hearing order. Mr. Kozel ordered the transcript from these proceedings, but did not receive it until the day of trial. Thus he complains that he had no notice that Judge Coar's pre-hearing order applied and his lack of compliance therewith was substantially justified under Fed.R.Civ.P. 16(b).

Examining this case and its entire procedural history leads us to conclude that Mr. Kozel should have known that Judge Coar's pretrial order still applied in the case for, as far as he knew, no other pretrial order had been entered in the case. Initially this case was set for trial on May 6, 1991. Judge Coar later reset the trial for May 13, 1991, and issued the April 1, 1991 pre-hearing order. Maurice then requested and received a continuance in the matter and the trial was reset for August 26, 1991. When that date approached, Maurice again moved the court to continue the case to a later date. Initially the court refused to grant this motion. When August 26 arrived, Dornik filed a motion for summary judgment, and in the alternative, a motion for leave to file exhibits instanter, and in the alternative, a motion to continue the matter. In response Maurice filed a motion for sanctions asking that Dornik be prohibited from presenting exhibits and witnesses because Dornik had not complied with the April 1 pre-hearing order. Judge Coar denied both motions and continued the matter until December 9, 1991, which was later rescheduled for December 16, 1991. He stated that a new pre-hearing order would be issued, although this never occurred. On November 15, Dornik filed and properly served all required documents in compliance with the April 1, 1991 pre-hearing order. Maurice did not comply or otherwise respond. When December 16 arrived, Dornik was present in court, prepared for trial, but neither Maurice nor his attorney appeared. Judge Coar graciously reset the trial date for March 6, 1992. After the case was reassigned, on February 14, 1992, Judge Squires held a hearing at which neither Maurice nor his attorney appeared, despite re-

ceiving proper notice. During this hearing Judge Squires indicated that Judge Coar's pre-hearing order would apply in this case.

Under this long and tortured procedural history, we find it difficult to believe that Maurice can complain about lack of notice. After the April 1, 1991 pre-hearing order was issued, neither Judge Coar nor Judge Squires ever vacated the April 1 order or issued a new pre-hearing order. Moreover, the April 1, 1991 order was the exact same as the first pre-hearing order issued by Judge Coar. So even if a new pre-hearing order had been issued by Judge Coar after the August 26 hearing, Maurice could logically assume it would contain the same requirements. Dornik complied with the requirements of the pre-hearing order on November 15, 1991, thus providing Maurice with further evidence that Judge Coar's order still applied. The statements made by Judge Squires during the February 14, 1992 hearing were completely unnecessary to inform Maurice that the April 1, 1991 pre-hearing order still applied. Therefore, failing to attend this hearing is not a sufficient justification for not complying with the April 1, 1991 pre-hearing order and Judge Squires was within his discretion in granting Dornik's motion for sanctions. If Maurice assumed that Judge Squires would automatically apply his own pretrial order to the case, he was clearly wrong.

■ As his second argument against Judge Squires' granting of sanctions, Maurice argues that Judge Coar's pre-hearing order exceeds the scope of Fed.R.Civ.P. 16 by requiring that all witnesses be identified within fourteen days of the hearing, and that a brief summary of their testimony be filed.[3] Several sections of Rule 16(c) authorize the judge to require the parties to take actions for

(1) the formulation and simplification of the issues . . . ;

(3) the possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof . . . ;

(4) the avoidance of unnecessary proof and of cumulative evidence;

(5) the identification of witnesses. . . .

A fourteen day notice requirement in the pretrial order seems logically designed to accomplish these stated purposes and Maurice presents no argument to the contrary.[4]

■ We also reject Maurice's argument that due process is violated because Judge Squires and Judge Coar typically use two different types of pre-hearing or pretrial orders. Judge Squires never entered an order in this case, and we have no grounds to review what Maurice represents to be Judge Squire's standard order. And, as we held above, Judge Coar's pre-hearing order issued in this case is well within Rule 16.

In summary, we hold that none of Maurice's arguments show good cause under Rule 16(f) sufficient to excuse his compliance with Judge Coar's pre-hearing order, and Judge Squires did not abuse his discretion in sanctioning Maurice.

### 2. Severity of Sanction

■ Maurice also complains that the sanctions imposed by the bankruptcy court were too severe under Fed.R.Civ.P. 37. When Maurice failed to comply with Judge Coar's April 1, 1991 pre-hearing order in advance of trial on March 6, 1992, Judge Squires prohibited Maurice from interposing relevancy objections to exhibits offered by Dornik, calling Dornik as an adverse witness, and from using Dornik to authenticate exhibits. Rule 16(f) states in relevant part:

If a party or party's attorney fails to obey a scheduling or pretrial order . . . the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule

3. Bankruptcy courts issue pre-hearing orders under *Federal Rule of Bankruptcy Procedure 7016* which applies Federal Rule of Civil Procedure 16.

4. Maurice also argues that a judge can only issue a pretrial order after consulting with the attor-

neys for the parties, and because this did not occur, Judge Coar's pre-hearing order is invalid. In support, he relies on Rule 16(b). This subsection, however, applies to scheduling and planning orders issued no later than 120 days after filing of the complaint, and not to pretrial orders.

37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances made an award of expenses unjust.

Fed.R.Civ.P. 16(f). Under Fed.R.Civ.P. 37 a wide range of sanctions are available to a judge including (1) refusing to allow the disobedient party from supporting or opposing designated claims or defenses, or from prohibiting that party from introducing certain matters into evidence, Fed.R.Civ.P. 37(b)(2)(B); and (2) the most drastic penalty of rendering a judgment of default against the disobedient party. Fed.R.Civ.P. 37(b)(2)(C).

■ Two purposes for requiring the parties to comply with a pre-hearing (or pretrial) order include identifying witnesses and resolving evidentiary disputes in advance of trial, thus narrowing the issues and expediting the trial. When one party fails to comply with a court's pre-hearing order without justifiable excuse, thus frustrating the purposes of the pre-hearing order, the court is certainly within its authority to prohibit that party from introducing witnesses or evidence as a sanction. Given the extended time period over which this case had been pending and the numerous times it was rescheduled, noncompliance is completely beyond our understanding and the sanctions imposed appear to be entirely justified, particularly where "[t]he record is completely devoid of any attempt by [Maurice] or his attorney to substantially comply with the Pre-Hearing Order." Mem.Op. at 16. No abuse of discretion occurred in this instance.

## C. Trial By Jury

■ Included in this appeal is Maurice's claim that he was entitled to have his claim heard by a jury, a demand originally denied by Judge Coar on April 1, 1991. Maurice argues that he was entitled to have his claims of fraudulent misrepresentation and willful and malicious conversion heard by a jury in the bankruptcy court. He argues that because he would have been entitled to a trial by jury had these issues been raised in the 1982 state court proceedings, he should receive the same rights in the federal courts.

■ The central issue presented to the bankruptcy court was whether or not the debt owed to Dornik was dischargeable in bankruptcy, and this hinged on whether Maurice made fraudulent misrepresentations to Dornik, or willfully and maliciously converted Dornik's money. See 11 U.S.C. §§ 523(a)(2)(A) & (a)(6). As we held in In re Swope, 466 F.2d 936, 938 (7th Cir.), cert. denied, 409 U.S. 1114, 93 S.Ct. 929, 34 L.Ed.2d 697 (1973), in dischargeability cases there is no constitutional right to a jury trial on the issue of dischargeability, only as to factual issues subsidiary to the question of dischargeability. On this issue we agree with the bankruptcy court that "[d]etermining whether Maurice fraudulently misappropriated or willfully and maliciously converted $20,000 is the dischargeability question itself. The subsidiary factual questions to which Swope refers are in the instant case those concerned with the existence and amount of the underlying debt. As a state court judgment has already been issued, neither of these issues is in dispute." April 1, 1991 Mem.Op. of Judge Coar.

Maurice also suggests that we should reconsider our decision in In re Grabill Corp., 967 F.2d 1152 (7th Cir.1992), where we held: "The Bankruptcy Code, as amended by the 1984 Act, does not authorize bankruptcy judges to conduct jury trials. Where a jury trial is required by the Seventh Amendment, that trial must be held in the district court, sitting in its original jurisdiction in bankruptcy." Id. at 1158. This holding, however, is not implicated here. The instant case is not about the power of bankruptcy judges to hold jury trials; it concerns whether Maurice has a constitutional right to a jury trial. As stated above, he is not so entitled.

## D. Whether Dornik Proved His Case

■ The last substantive argument we discuss concerns whether Maurice obtained Dornik's $20,000 by fraudulent misrepresentation or willful conversion. Maurice argues

that Dornik failed to prove the debt is non-dischargeable in bankruptcy under either 11 U.S.C. § 523(a)(2)(A) or 11 U.S.C. § 523(a)(6).

Under 11 U.S.C. § 523(a)(2)(A), Dornik was required to prove (a) the debtor obtained the $20,000 through representations either knowingly false or made with such reckless disregard for the truth as to constitute willful misrepresentation; (2) the debtor possessed an actual intent to defraud; and (3) Dornik actually and reasonably relied on the false representation. *In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985). Alternatively, under 11 U.S.C. § 523(a)(6), Dornik had the burden of proving that the injury resulted from an act that was both willful and wanton. *Kimzey,* 761 F.2d at 424; *United Bank of Southgate v. Nelson,* 35 B.R. 766, 768 (N.D.Ill.1983).

Based primarily on the records from the state court proceedings introduced into evidence under Bankruptcy Rule 9017 (which expressly incorporates the Federal Rules of Evidence and Federal Rule of Civil Procedure 44), the bankruptcy court found that Dornik established his claim under both subsections of § 523. In his opinion Judge Squires extensively analyzed and discussed the issues, and Maurice fails to raise or intelligently challenge the reasoning employed by Judge Squires. Instead he merely quotes Judge Squires for each element of the case and concludes by stating that the state record contains no evidence of the fact and therefore we should find the finding to be clearly erroneous. He does not bother to discuss the issues or indicate why Judge Squire's findings are clearly erroneous. Maurice simply restates the arguments made to the district court, practically verbatim, and has failed to demonstrate specifically where the lower courts erred. Because of the lack of analysis and authority, we find no need to completely reanalyze the issues and dismiss Maurice's arguments.

Included in this line of reasoning, Maurice challenges the findings of the state court. He argues: "The real question in this case is not whether Dornik made a partnership contribution of $20,000, but whether he was entitled to a refund of the $20,000." App. Brief at 36. He goes on to argue that of the $20,000 originally given by Dornik to Maurice, only a portion of that money remains after expenses of the alleged partnership are deducted. Essentially this argument is an attempt to collaterally attack the underlying state court judgment in favor of Dornik, an impermissible attack under the doctrine of res judicata. We note that the Illinois Appellate Court for the Third District affirmed the circuit court's judgment for $20,000 in favor of Dornik and specifically reversed the circuit court's reduction for capital expenses. For our purposes it is irrelevant whether the state court failed to deduct expenses before rendering judgment. The state court rendered judgment in Dornik's favor in the amount of $20,000 and the issue here is whether this debt is dischargeable in bankruptcy. Collateral attack of the underlying claim is out of the question and we must affirm the bankruptcy court's $20,000 judgment against Maurice.

### E. Other Miscellaneous Unsupported Arguments

 Maurice raises several other footless issues in his brief for which he fails to cite any relevant authority. Many arguments are simply verbatim statements from earlier briefs which the district court did not even find worthy of discussion. Even though our circuit rules allow the parties to file briefs of up to fifty pages in length, we expect litigants to submit only concise and substantiated arguments. *See* Model Rule of Professional Conduct 3.1 ("A lawyer shall not ... assert or controvert an issue ... unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.") Federal Rule of Appellate Procedure 28(a)(5) requires the appellant, Maurice, to cite to authorities and to adequately describe his arguments. This court will not do his legal research and analysis. *See Pelfresne v. Williams Bay,* 917 F.2d 1017, 1023 (7th Cir.1990); *BNT Terminals,* 125 B.R. at 977–78. Accordingly, we dismiss the following arguments: (1) the debtor was denied equal protection when Maurice's motion for sanctions was denied and Dornik's motion for sanctions was granted; (2) the

bankruptcy judge should have dismissed Dornik's complaint or allowed the debtor's affirmative defenses; (3) Judge Squires, later affirmed by the district court, erroneously ruled against the debtor based on the erroneous finding that the debtor's attorney had orally misrepresented that Judge Coar's prehearing order had been vacated; (4) the bankruptcy court is not obligated to accept the decision of the state court where that decision is clearly wrong; (5) the trial judge incorrectly awarded both prejudgment and postjudgment interest; (6) this action is not a core proceeding; and (7) N.D.Ill.Gen.R. 12 requires a party to serve opposing counsel two days before presenting the motion in court and this rule applies to motions made during trial. In the words of the district court, these arguments are "too hypertechnical and wholly groundless to justify discussion." Dist.Ct. op. at 3–4.[5]

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

5. At the time of oral argument Dornik's motion to dismiss this appeal was still pending before this court. For obvious reasons this motion is now moot.