In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3923

Harold W. McClellan,

Plaintiff-Appellant,

v.

Bobbie Darrell Cantrell,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 5061--James F. Holderman, Judge.

Argued April 14, 2000--Decided July 5, 2000

 Before Posner, Chief Judge, and Ripple and Rovner,
Circuit Judges.

 Posner, Chief Judge. In the ordinary course of
bankruptcy, the debtor's assets are applied to
the payment of his debts and, even though the
assets will usually be insufficient to pay those
debts in full, he will emerge from bankruptcy
with the unpaid balance discharged so that he can
start afresh with no overhang of debt. Some types
of debt, however, are not dischargeable, and
among them are debts "for money, property,
services, or an extension, renewal, or
refinancing of credit, to the extent obtained by
false pretenses, a false representation, or
actual fraud, other than a statement respecting
the debtor's or an insider's financial
condition." 11 U.S.C. sec. 523(a)(2)(A). The most
common type of fraud involves a deliberate
misrepresentation or, what amounts to the same
thing, a deliberately misleading omission. E.g.,
In re Docteroff, 133 F.3d 210, 216 (3d Cir.
1997). The question this appeal presents is
whether, as the bankruptcy court and district
court ruled, this is the only type of fraud that
comes within the exception for "actual fraud." We
have not been able to find any reported appellate
cases that deal with this question.

 Because the creditor's case was dismissed for
failure to state a claim, we must take the
allegations of his complaint as true. In 1989

McClellan, the creditor, sold his business assets, consisting of ice-making machinery, to the debtor's brother for $200,000, payable in installments. McClellan retained, but did not perfect, a security interest in the machinery. The brother defaulted, owing McClellan more than $100,000. McClellan sued the brother in an Illinois state court, seeking among other things an injunction against the brother's transferring the machinery. With the suit pending, the brother "sold" the machinery to his sister, the debtor. The bill of sale recites the price as $10, and there is no reason to believe that it was more; we may assume therefore that it was a gratuitous transfer. The sister knew about the suit and in accepting the transfer of the machinery was colluding with her brother to thwart McClellan's collection of the debt that her brother owed him. She turned around and sold the machinery for $160,000--and she's not telling anyone what has happened to that money.

The sale took place in 1994 and the following year McClellan added the sister as a defendant in his state court action, claiming that her brother's transfer of the machinery to her had been a fraudulent conveyance. 740 ILCS 160/5. Two years later, with the state court suit still pending, the sister filed for bankruptcy under Chapter 7. Fearing lest her debt to him be discharged at the conclusion of the bankruptcy proceeding, McClellan filed an adversary proceeding against her seeking to recover the debt that he alleged she owed him as the recipient of a fraudulent transfer of the assets that secured her brother's debt. The bankruptcy court dismissed his complaint on the ground that the debt was dischargeable, and the district court affirmed because "the Supreme Court recently scoffed at the idea that a debt could be nondischarg[e]able under the fraud exception of sec. 523(a)(2)(A) without a showing of material misrepresentation and reliance on the statement. See Field v. Mans, 516 U.S. 59, 68 (1995)." Actually Field has nothing to do with this case. The fraud there took the form of a misrepresentation, and the only issue was the nature of the reliance that a plaintiff must show to prove fraud in such a case. Nothing in the Supreme Court's opinion suggests that misrepresentation is the only type of fraud that can give rise to a debt that is not dischargeable under section 523(a)(2)(A). No other type of fraud was alleged in the case or discussed in the opinion.

Plenty of cases, it is true, assume that fraud equals misrepresentation, but like Field they are cases in which the only fraud charged was misrepresentation. In re Maurice, 21 F.3d 767,

773-74 (7th Cir. 1994); In re Ettell, 188 F.3d 1141, 1144 (9th Cir. 1999); In re Biondo, 180 F.3d 126, 133-34 (4th Cir. 1999); Sanford Institution for Savings v. Gallo, 156 F.3d 71, 74-76 (1st Cir. 1998); Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997); In re Hashemi, 104 F.3d 1122 (9th Cir. 1996); In re Apte, 96 F.3d 1319, 1322 (9th Cir. 1996); In re Young, 91 F.3d 1367, 1373 (10th Cir. 1996); In re Eashai, 87 F.3d 1082, 1086-89 (9th Cir. 1996); In re Arm, 87 F.3d 1046 (9th Cir. 1996); In re Johannessen, 76 F.3d 347, 350 (11th Cir. 1996); In re Vann, 67 F.3d 277, 280 (11th Cir. 1995). Most frauds do involve misrepresentation and so In re Biondo, for example, describes the fraud involved there as "the tort of fraudulent misrepresentation." 180 F.3d at 134; see also Field v. Mans, supra, 516 U.S. at 70; In re Maurice, supra, 21 F.3d at 773-74. But section 523(a)(2)(A) is not limited to "fraudulent misrepresentation." Although Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 472-74 (1977), held that the concept of fraud in the SEC's Rule 10b-5 is limited to misrepresentation and therefore did not reach the nonrepresentational breach of fiduciary duty--a squeeze out of minority shareholders--charged in that case, there are no such holdings with regard to the concept of "actual fraud" in 11 U.S.C. sec. 523(a)(2)(A). There could not be; for by distinguishing between "a false representation" and "actual fraud," the statute makes clear that actual fraud is broader than misrepresentation. Collier's treatise, while assuming along with the cases that we have cited that "actual fraud" involves a misrepresentation, defines the term much more broadly--as "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another," 4 Collier on Bankruptcy para. 523.08[1][e], p. 523-45 (15th ed., Lawrence P. King ed., 2000)--which is a good description of what the debtor is alleged to have done here.

 Pressed at argument, her lawyer was unable to suggest any reason why the type of fraud presented by the allegations of McClellan's complaint should be treated differently from other types of fraud. The two-step routine that McClellan alleges and that we must take as true--in which Debtor A transfers valuable property to B for nothing in order to keep it out of the hands of A's creditor and B then sells the property and declares bankruptcy in an effort to shield herself from liability for having colluded with A to defeat the rights of A's creditor--is as blatant an abuse of the Bankruptcy Code as we can imagine. It turns bankruptcy into an engine for fraud. Though cases often say that exclusions from dischargeability should be narrowly construed, Gleason v. Thaw, 236 U.S. 558, 562 (1915); Palmacci v. Umpierrez, supra, 121 F.3d at

786, we have emphasized that they "serve vital functions." In re Mayer, 51 F.3d 670, 674 (7th Cir. 1995). "Congress concluded that preventing fraud is more important than letting defrauders start over with a clean slate, and we must respect that judgment." Id.

No learned inquiry into the history of fraud is necessary to establish that it is not limited to misrepresentations and misleading omissions. "Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." Stapleton v. Holt, 250 P.2d 451, 453-54 (Okla. 1952). Breaches of fiduciary obligation are commonly punished as frauds even when there is no misrepresentation or misleading omission. E.g., Doner v. Phoenix Joint Stock Land Bank, 45 N.E.2d 20, 24 (Ill. 1942); Conway v. Conners, 427 N.E.2d 1015, 1020 (Ill. App. 1981). A separate provision in section 523 excludes from discharge debts arising from fraud "in a fiduciary capacity," 11 U.S.C. sec. 523(a)(4); it would be shocking if that exclusion were limited to misrepresentations by fiduciaries. And, coming to this case, when a debtor transfers property to a third party without adequate consideration, the transfer is deemed a fraud on the debtor's creditors. 740 ILCS 160/5-6; Scholes v. Lehmann, 56 F.3d 750 (7th Cir. 1995). The fraud may be either constructive or actual. (Sometimes the terms "fraud in law" and "fraud in fact" are used.) It is constructive if the only evidence of it is the inadequacy of the consideration; it is actual if the debtor intended by the transfer to hinder his creditors. See, e.g., id. at 757; In re Liquidation of MedCare HMO, Inc., 689 N.E.2d 374, 380-81 (Ill. App. 1997); Regan v. Ivanelli, 617 N.E.2d 808, 814 (Ill. App. 1993). The fraud exception to the dischargeability of debts in bankruptcy does not reach constructive frauds, only actual ones, but the allegation here is that the transfer involved an actual fraud; the debtor's brother was deliberately attempting to thwart McClellan's effort to collect the debt due him. And while it is true that McClellan did not rely on the brother's retaining the security for the loan, reliance is relevant only when a fraud takes the form of a misrepresentation. And that, as we have emphasized, is not the only form that fraud can take or the only form that makes a debt nondischargeable, given that debts created by misrepresentations constitute a separate category of nondischargeable debts.

The distinction between actual and constructive fraud is the key to this case in two distinct senses.  First.  To transfer property for less than adequate consideration may be desperate, foolish, or imprudent, and the receipt of such a transfer a pure windfall, but neither the transfer nor the receipt is in and of itself dishonest, and so neither is an appropriate ground for refusing to allow the debtor to discharge the debt arising from the transfer and thus to get on with his life without the debt hanging over his head. The situation is entirely different, and the debtor's equities and argument for discharge much weaker, when the debtor is guilty of intent to defraud. The purpose of section 523(a)(2)(A) in confining nondischargeability to actual fraud is merely to recognize this difference and thus to exclude constructive fraud. See Neal v. Clark, 95 U.S. 704, 709 (1877); In re Anastas, 94 F.3d 1280, 1286 (9th Cir. 1996); 4 Collier on Bankruptcy, supra, para. 523.08[1][e], p. 523-45. This purpose is unrelated to whether the intent to defraud was implemented by a misrepresentation or by some other improper means.

 Second.  The distinction between actual and constructive fraud answers the objection that section 523(a)(2)(A) is intended to reach fraud in the inception of a debt--fraud that created the debt--whereas the law of fraudulent conveyance is merely a method of facilitating the collection of a previous debt that need not itself have been created by a fraud. The first point is correct; the second point is correct in a case of a constructively fraudulent conveyance; but when actual fraud is involved, the first point is satisfied. To explain: when a conveyance is merely constructively fraudulent, in the sense that having transferred the property that secured the debt without obtaining adequate consideration the debtor is now unable to pay his creditor, the transferee is not guilty of an actual fraud against the creditor and so the creditor cannot use section 523(a)(2)(A) to prevent the transferee from discharging the debt in bankruptcy. And so in this case, if though the debtor's brother intended to thwart McClellan and was thus committing actual fraud, his sister was innocent--if she had no intention of hindering any creditor--the debt that McClellan is seeking to collect from her would not have been obtained by her by actual fraud. But she is alleged to have been a full and equal participant in her brother's fraud, to have been in effect his accomplice, as in Cenco v. Seidman & Seidman, 686 F.2d 449, 452-453 (7th Cir. 1982). The debt that McClellan is seeking to collect from her (and prevent her from discharging) arises by operation

of law from her fraud. That debt arose not when her brother borrowed money from McClellan but when she prevented McClellan from collecting from the brother the money the brother owed him.

The Bankruptcy Code defines "debt" very broadly, as "liability on a claim," 11 U.S.C. sec. 101(12), and "claim" very broadly, as any "right to payment," whether liquidated or unliquidated, disputed or undisputed, legal or equitable. sec. 101(5); see generally Johnson v. Home State Bank, 501 U.S. 78, 83-84 and n. 5 (1991). A debt need not, therefore, arise from a loan. The brother's original debt to McClellan arose from a loan, but is not the debt at issue here. The debt at issue here is the debt that the sister incurred to McClellan by committing a fraud against him. Because it was an actual fraud, the debt that it gave rise to is not dischargeable.

This result would be paradoxical if it meant that while the sister could not discharge her fraud debt in bankruptcy, the brother could have discharged the same debt had he declared bankruptcy. It does not mean this. What is true is that if he had merely defaulted on his original debt to McClellan, which so far as appears was not created by a fraud, and later declared bankruptcy, that debt would have been dischargeable. If, however, he had rendered the debt uncollectible by making an actually fraudulent conveyance of the property that secured it, his actual fraud would give rise to a new debt, nondischargeable because created by fraud, just as in the case of the sister, his accomplice in fraud. But it would be a new debt only to the extent of the value of the security that he conveyed, for that would be the only debt created by the fraud itself. For example, if he owed McClellan $100,000 and defaulted after having transferred to his sister property securing the debt worth $10,000, he would be entitled to discharge $90,000 of the debt, for only the $10,000 was a debt created by fraud.

Another feature of the case, however, may seem to tell against our interpretation of section 523(a)(2)(A). We have been speaking of the nondischargeability of a debt that is created by fraud, but the actual language of the statute is "any debt . . . for money, property, [or] services . . . to the extent obtained by . . . actual fraud." The words "obtained by" go with "money, property, [or] services," not with "debt." E.g., In re Mones, 169 B.R. 246, 251 n. 2 (Bankr. D. Colo. 1994). A debt is not something you obtain; it is something you incur as a consequence of having obtained money or something else of value from another person (the creditor). The sister obtained, for $10, machinery that she

was able to sell for $160,000. It is true that she didn't obtain this money by a fraud against her brother. They were acting in cahoots. But the statute does not require that the transferor be the victim of the fraud, but only that money, property, or services be obtained by fraud, and but for fraud the sister would not have obtained a $160,000 windfall. What is more, the property, the machinery, was not really the brother's to give away; he was not the equitable owner; equity would have imposed a constructive trust for McClellan's benefit on the machinery wrongfully conveyed by the brother. Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Wells, No. 99-2018, 2000 WL 631028, at *1 (7th Cir. May 17, 2000); Clair v. Harris Trust & Savings Bank, 190 F.3d 495, 498-99 (7th Cir. 1999); Beatty v. Guggenheim Exploration Co., 122 N.E. 378 (1919) (Cardozo, J.); 1 Dan B. Dobbs, Law of Remedies: Damages--Equity--Restitution sec. 4.3(2) (2d ed. 1993). Stated differently, the brother gave his sister McClellan's security interest, McClellan's property, which means that she was taking property from--defrauding--McClellan directly.

For completeness we note that it might also be possible to shoehorn the facts of this case into another provision of section 523, the provision that excludes from discharge debts arising from "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. sec. 523(a)(6); see In re Bammer, 131 F.3d 788 (9th Cir. 1997) (en banc). But why shoehorn? What happened here was fraud-- though this is on the assumption, of course, that McClellan can prove the allegations of his complaint. If they are true, however, he has stated a claim. He is entitled to try to prove that they are true.

Reversed and Remanded.


RIPPLE, Circuit Judge, concurring.  In looking at the facts of this case, as alleged by Mr. McClellan and taken as true by us on this motion to dismiss, there is an intuitive sense that Ms. Cantrell should not be able to escape the consequences of her deception. Our task, however, is to determine whether there is any specific statutory exception to the discharge of debts in bankruptcy, as set forth in 11 U.S.C. sec. 523, that applies.

1.

Given the overall structure of sec. 523, it seems clear that Congress intended sec. 523(a)(2)(A) to cover debts relating to the

procurement of money or property by fraud and sec. 523(a)(6) to apply in a situation such as the one before us. Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--(A) false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. sec. 523(a)(2). The language "obtained by" clearly indicates that the fraudulent conduct occurred at the inception of the debt, i.e., the debtor committed a fraudulent act to induce the creditor to part with his money or property. Ms. Cantrell played no role, fraudulent or otherwise, in inducing Mr. McClellan to part with his money or property. Nevertheless, the majority makes a plausible argument that a literal, although perhaps strained, reading of sec. 523(a)(2)(A) would permit the subsection to cover the situation before us. Section 523(a)(6), however, more easily covers our facts because it reaches any debt for willful and malicious injury to another's property. I think it is important to point out that sec. 523(a)(6) provides a far more direct avenue for dealing with a situation such as the one we have before us.

Although Mr. McClellan raised his sec. 523(a)(6) claim originally, he unfortunately did not make this argument to the district court, and therefore we would consider such an argument to have been waived. Under the circumstances here, however, I think it makes little sense to invoke the waiver doctrine when we are according the creditor the same relief under another subsection. Under the majority's approach, we are now ignoring the proper avenue of relief in favor of an awkward and ill-fitting one. We ought not allow a litigant to impede this court from fulfilling its duty to clarify the law for future litigants.

2.

In looking at sec. 523, I believe, as stated above, that the provision that most aptly describes the situation here is sec. 523(a)(6). This subsection exempts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. sec. 523(a)(6).

According to Mr. McClellan, he entered into an agreement to sell his ice machines to Ms. Cantrell's brother, Rodney Cantrell. Although the sales agreement provided that a security interest would secure the purchase price of the ice machines, Mr. McClellan never perfected or filed his security interest. Rodney Cantrell paid the initial installment but failed to pay the

remainder of the purchase price. Mr. McClellan then filed an action in Illinois state court for an injunction and damages. Two years later and while the state court suit was still pending, Rodney Cantrell sold the ice machines to Ms. Cantrell for $10.00 and "other good and valuable consideration." Over a year later, Ms. Cantrell sold the ice machines to a third party for $160,000. Mr. McClellan then amended his state court complaint to include Ms. Cantrell. This amended complaint alleged that Ms. Cantrell had participated in the fraudulent acquisition and transfer of the ice machines in violation of the Uniform Fraudulent Transfer Act, 749 Ill. Comp. Stat. Ann. 160/5. Ms. Cantrell later filed for bankruptcy under Chapter 7 of the Bankruptcy Code, and Mr. McClellan then filed an adversary complaint seeking the nondischargeability of Ms. Cantrell's debt to him, which he claims arose from his security interest.

Section 523(a)(6) applies when the debtor willfully and maliciously injures the property of another. We therefore need to ask whether Ms. Cantrell has a debt to Mr. McClellan for (1) willfully and maliciously (2) injuring (3) Mr. McClellan's property.

The first question is whether Ms. Cantrell has a debt owing to Mr. McClellan. The definitions section of the Bankruptcy Code defines "debt" as a liability on a claim, see 11 U.S.C. sec. 101(12), and "claim" as a right to payment, see id. sec. 101(5). According to the legislative history of the Code, a "claim" is any right to payment, and the term is to be given the broadest possible definition. See S. Rep. No. 95-989, at 21 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5807-08. Thus, a "claim" includes all legal obligations of the debtor, no matter how remote or contingent. See id. at 5808. The legislative history also explains that the term "debt" is coextensive with the term "claim," i.e., when the debtor has a debt owing to the creditor then the creditor has a claim against the debtor. See id. at 5809. If Mr. McClellan has a right to payment from Ms. Cantrell, then she has a debt owing to Mr. McClellan. Thus, the question remains whether Mr. McClellan has a right to payment from Ms. Cantrell.

At this point, we look to Illinois law. Mr. McClellan has a security agreement with Rodney Cantrell, which he failed to perfect. An unperfected security agreement is always valid between the parties, that is, between Rodney Cantrell and Mr. McClellan. See 810 Ill. Comp. Stat. Ann. sec. 5/9-201 ("[A] security agreement is effective according to its terms between the parties . . . ."). Thus, Mr. McClellan could

pursue, and currently is pursuing, an action against Rodney Cantrell in state court for the amount Rodney Cantrell owes Mr. McClellan.

Rodney Cantrell always had the right to sell the collateral covered by his security agreement. See id. sec. 5/9-205. Similarly, Mr. McClellan always had the right to payment under his security agreement, even after the sale of the collateral because, under Illinois law, Mr. McClellan has a security interest in the proceeds from the sale of the collateral. See id. sec. 5/9-203(3). Unfortunately, in this case, the proceeds from the sale of the collateral--the ice machines-- were only $10 and other good and valuable consideration. Thus, we now need to consider whether Mr. McClellan may proceed against Ms. Cantrell, as the purchaser of the collateral, pursuant to his security interest.

According to the official comment to the Illinois Commercial Code sec. 9-201, the general rule is that a security agreement is effective between the parties and against third parties. See id. sec. 5/9-201. An exception to this general rule is for a security interest that has not been perfected. Then, the unperfected security interest is subordinate to the rights of perfected security interests, lien creditors, including trustees in bankruptcy, and a buyer not in the ordinary course of business to the extent the buyer gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected. See id. sec. 5/9-301. A "buyer in the ordinary course of business" buys the goods "from a person in the business of selling goods of that kind." Id. sec. 5/1-201(9). Thus, Ms. Cantrell was a buyer not in the ordinary course because Rodney Cantrell was not in the business of selling ice machines. See Arcadia Upholstering, Inc. v. 165 Restaurant, Inc., 516 N.E.2d 523, 526 (Ill. App. Ct. 1987). Although Ms. Cantrell is a buyer not in the ordinary course of business, Mr. McClellan's complaint alleges that Ms. Cantrell did not satisfy the other requirements for priority, that is, she did not give value nor receive the collateral without knowledge of Mr. McClellan's security interest. Therefore, because Ms. Cantrell was not a good faith purchaser of the collateral, Mr. McClellan's security interest takes priority over her interest in the collateral, that is, she takes the collateral subject to his security interest. See Milledgeville Community Credit Union v. Corn, 716 N.E.2d 864, 870 (Ill. App. Ct. 1999) (recognizing the general rule set forth in the Code that "'a security interest continues in collateral despite a sale or other disposition of that collateral'" (quoting Martin Brothers Implement Co. v.

Diepholz, 440 N.E.2d 320 (Ill. App. Ct. 1982))). Because she sold the collateral to a disinterested third person, Mr. McClellan has a security interest, and right to payment, in the proceeds from the sale, see 810 Ill. Comp. Stat. Ann. sec. 5/9-203(3), and Ms. Cantrell has a debt owing to Mr. McClellan. To continue with the other elements of sec. 523(a)(6), Mr. McClellan's property is his security interest, which carried over on the ice machines because Ms. Cantrell was not a good faith purchaser. See 810 Ill. Comp. Stat. Ann. sec. 5/1-201(37) ("'Security interest' means an interest in personal property or fixture which secures payment or performance of an obligation."); see also Williams v. Chartwell Fin. Servs., Ltd., 204 F.3d 748, 754 (7th Cir. 2000) (Under Illinois law, "the creation of a security interest gives a creditor an interest in property."). Ms. Cantrell injured Mr. McClellan's property because she prevented him from collecting on the debt he was owed. Finally, Mr. McClellan has alleged that Ms. Cantrell intentionally and maliciously injured his property because she intended to prevent him from collecting on his claim. He states that, in the face of Rodney Cantrell's debt to him and of the ensuing lawsuit, she purchased the ice machines and then sold them to a disinterested third party. These acts, Mr. McClellan claims, show that she had the requisite state of mind for willful and malicious injury. Therefore, Mr. McClellan has alleged that Ms. Cantrell owes him a debt for willfully and maliciously injuring his property, and he could have pursued his claim against Ms. Cantrell under sec. 523(a)(6).

Instructive in this case is In re Bammer, 131 F.3d 788 (9th Cir. 1997) (en banc). In that case, the mother embezzled money from several victims, including the plaintiff, and was indicted. While she was negotiating a plea agreement, which included an order for restitution, she transferred her real property to her son. This act prevented the plaintiff from recovering on his claim against the mother under the restitution order, a consequence the son knew about. The plaintiff then filed an action against both the mother and the son for fraudulent transfer. When the son filed for bankruptcy, the plaintiff was allowed to prevent the discharge of his debt in the son's bankruptcy proceedings. The Ninth Circuit held that, under sec. 523(a)(6), the son maliciously injured the plaintiff's property by impairing the plaintiff's right to recover his debt from the mother.

Here, while Mr. McClellan's suit was pending against Rodney Cantrell, Ms. Cantrell bought the ice machines, which prevented Mr. McClellan from recovering on his claim under the security

agreement. When Ms. Cantrell filed for bankruptcy, Mr. McClellan should have been able to prevent the discharge of the debt because Ms. Cantrell had willfully and maliciously injured Mr. McClellan's property, his security interest, by impairing his right of collection./1

 I would hold that sec. 523(a)(6) requires an exception to the discharge of this debt.


/1 This conclusion holds despite the Ninth Circuit opinion of In re Saylor, 108 F.3d 219 (9th Cir. 1997). In Saylor, the plaintiff filed suit for fraudulent transfer against the defendant. The defendant, however, filed for bankruptcy before the plaintiff was awarded judgment on his claim. The plaintiff then attempted to prevent the discharge of his debt in the defendant's bankruptcy proceeding under sec. 523(a)(6). The court held that he did not have "property" that was injured because he did not have a judgment at the time the defendant filed for bankruptcy, nor did he have a security interest. Obviously, the distinguishing factor here is that Mr. McClellan held a security interest at the time Ms. Cantrell filed for bankruptcy, and, therefore, he had property capable of being injured.