In rc Steven Gregory **BAMMER**, Debtor.

James M. **MURRAY**, Appellant,

v.

Steven Gregory **BAMMER**, Appellee.

No. 95–16310.

United States Court of Appeals, Ninth Circuit.

Submitted En Banc Oct. 23, 1997 *.

Decided Nov. 20, 1997.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P.

34(a) and Ninth Circuit Rule 34–4.

Chester J. Peterson, McDaniel & Kaup, Phoenix, Arizona, for the appellant.

Franklin K. Gibson, Gibson, Matheson, Weber & Lalliss, Mesa, Arizona, for the appellee.

Before HUG, Chief Judge, PREGERSON, BRUNETTI, KOZINSKI, O'SCANNLAIN, TROTT, RYMER, KLEINFELD, HAWKINS, TASHIMA, and THOMAS, Circuit Judges.

TROTT, Circuit Judge.

James Murray, a creditor of Steven Bammer, appeals a judgment of the Bankruptcy Appellate Panel ("BAP") affirming a judgment of the bankruptcy court. The BAP concluded that Bammer's actions in causing financial harm to Murray were not "malicious" within the meaning of 11 U.S.C. § 523(a)(6), and that Bammer's debt arising from that harm was dischargeable. We have jurisdiction pursuant to 28 U.S.C. § 158(d), and we reverse and remand for further proceedings consistent with this opinion.[1]

## I

## Background

Between 1985 and 1990, Alta Bammer embezzled $900,000 from various victims, including $160,000 from James Murray. She subsequently told her son Steven Bammer about what she had done. Both of them understood she was negotiating a plea agreement that contemplated restitution in the hope of avoiding or minimizing prison time. Nevertheless, she and Steven hatched and implemented a scheme with respect to the equity in her house, an asset that should have been available to compensate her victims.

The scheme allowed Alta fraudulently to convey to Steven for no consideration a third mortgage on her real property. Steven's involvement was essential to the success of the scheme. Because both of them knew she would be unable to obtain a loan against her property on her own, he covertly obtained one on her behalf. He admits he obtained the loan with no intention of repaying it even though he had the wherewithal to do so.

The bankruptcy court concluded on the basis of the evidence that Steven *knew* that by securing the loan, Murray would be deprived of the immediate ability to satisfy all or a portion of his restitution judgment against Alta. In other words, Steven knowingly injured Murray's right to recover money to which he was entitled. Indeed, though injury to a right created by statute or associated with the criminal process is not necessary to our ultimate conclusion, Steven knowingly injured a victim's right to restitution for a crime covered by the Victim Witness Protection Act, 18 U.S.C. § 3663. Alta Bammer then used the $50,000.00 loan money obtained for her by her son not to pay her victims, but for personal expenses—including $15,000 for her criminal defense lawyer in connection with a pre-indictment felony plea in federal court.

While Steven was securing on behalf of his insolvent mother a loan against the property fraudulently conveyed to him, Murray was filing and pursuing civil lawsuits in state court against both Bammers, for fraud and for a fraudulent conveyance of the real property at issue. Steven, of course, was not bound by the order of restitution against his mother in the criminal case. Eventually, Murray won a judgment against Steven and his mother awarding him substantial compensatory damages. The judgment conclusively held that Alta's original transfer of the home to Steven was fraudulent. The judgment reads in part as follows:

2. As to defendants Alta B. Bammer and Steven G. Bammer, Judgment shall be entered in favor of plaintiff James M. Murray as follows:

A. As to the action filed as Case No. 641672, James M. Murray is hereby

---

[1]. The three-judge panel opinions in this case, found in 112 F.3d 1355 (9th Cir.1997), are ordered withdrawn.

awarded $107,647.86 against defendant Alta B. Bammer;

B. As to the action filed as Case No. 651470, James M. Murray is hereby awarded $107,647.86 in damages against defendants Alta B. Bammer and Steven G. Bammer, jointly and severally, due to the transfer of the real property commonly known as 26902 La Vonne Lane, Huntington Beach, California, which transfer was a fraudulent transfer pursuant to Civil Code sections 3934.04 [sic] and 3439.05.[2]

Just as important to the instant case as this judgment, however, are the findings of the Superior Court in Murray's civil case against Steven on which the judgment was based:

(By Judge T. Thrasher)

What is James Murray's damages, if any, *as to Steven Bammer?* The judgment will be the $157,647.86. [sic].

And the basis for that is the court's finding that the transfer from Alta to Steven was with *actual intent* to hinder at least, delay any of her creditors and/or *to defraud any of her creditors, specifically Mr. Murray.*

Reporter's Transcript, Feb. 25, 1992, p. 24 (emphasis added). Thus, the record contains a finding by the Superior Court of an actual intent in the loan scheme to defraud Murray, a finding made part of Murray's complaint in the bankruptcy court as Exhibit "A", and a finding entitled to respect in the federal courts.

Steven Bammer then filed for bankruptcy in order to shed this substantial debt owed to Murray arising from the judgment.

## II

### The Definition of "Malicious"

This appeal focuses on Section 523(a)(6) of the Bankruptcy Code, which states:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(b) for willful and malicious injury by the debtor to another entity or the property of another entity; ...

11 U.S.C. § 523(a)(6).[3]

Because Steven Bammer accepted before the BAP the finding of the bankruptcy court that the fraud was "willful," the only question remaining is whether it was "malicious." He says it was not. The bankruptcy court and the BAP agreed with him. We respectfully do not.

The law of our circuit defines a "malicious" injury as one involving (1) a wrongful act, (2) "done intentionally, (3) which necessarily causes injury, and (4) is done without *just* cause or excuse." *In re Cecchini,* 780 F.2d 1440, 1443 (9th Cir.1986) (emphasis added). This four-part definition does *not* require a showing of biblical malice, i.e., personal hatred, spite, or ill-will. *Id.* at 1442–43. Nor does it require a showing of an intent to injure, but rather it requires only an intentional act which causes injury. *Id.* Moreover, we held in *In re Britton,* 950 F.2d 602, 606 (9th Cir.1991) that a court applying this test must take into consideration a policy that favors the victims of fraud over the perpetrators.

The bankruptcy court and the BAP concluded as to the first three elements of malice that Steven Bammer's conspiratorial acts were (1) wrongful, (2) intentional, and (3) *necessarily caused harm to Murray,* but debtor Bammer escaped on the fourth element because he did all of this "out of compassion for his mother," and did not himself directly benefit financially from the scheme.

## III

### Standard Of Review

The issue we review is narrow. Steven Bammer's case rises or falls on whether he had a "just cause or excuse" for his injury to Murray's interests. The first three elements of *Cecchini's* definition of "malicious" are all questions of fact which we review for clear error. The fourth element,

---

**2.** The correct Code sections are *3439.04* and 3439.05. Section 3934.04 does not exist.

**3.** Murray originally based his claim of nondischargeability on section 523(a)(2)(A) and (a)(4), as well as (a)(6), but narrowed it to the latter at trial.

"just cause or excuse," however, presents a mixed question of law and fact. A mixed question of law and fact occurs when the historical facts are established; the rule of law is undisputed, i.e., "just cause or excuse"; and the issue is whether the facts satisfy the legal rule. *Pullman–Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790–91 n. 19, 72 L.Ed.2d 66 (1982); *Moss v. Commissioner,* 831 F.2d 833, 838 n. 9 (9th Cir.1987); *United States v. McConney,* 728 F.2d 1195, 1200 (9th Cir.1984) (en banc). Mixed questions presumptively are reviewed by us de novo because they require consideration of legal concepts and the exercise of judgment about the values that animate legal principles. *Boone v. United States,* 944 F.2d 1489, 1492 (9th Cir.1991); *McConney,* 728 F.2d at 1204. The question of whether a cause is "just" is a textbook example of a legal conclusion informed by historical facts.

In some cases we have held that discharge decisions are reviewed for abuse of discretion. *See, e.g., Finalco, Inc. v. Roosevelt (In re Roosevelt),* 87 F.3d 311, 314, *as amended,* 98 F.3d 1169 (9th Cir.1996); *Friedkin v. Sternberg (In re Sternberg),* 85 F.3d 1400, 1404–05 (9th Cir.1996). Insofar as these dictate de novo review of legal conclusions and clear error review of factual findings, they do not conflict with our decision today. Insofar as they presume a standard of review other than de novo for mixed questions, however, they conflict both with our decision today and with *McConney* and its progeny, and to that extent we overrule them.

Accordingly, although the bankruptcy court's finding of compassion is reviewed for clear error, we review de novo the conclusions of the courts below that Steven Bammer had "just cause" for his knowingly injurious act.

## IV

### Analysis

■ A cause can hardly be "just" when it entails helping an embezzler avoid restitution for her crimes, and when the expression of the cause involves intentional fraud. "Just fraud" in this context is a perverse oxymoron that sets the modifier on its head. *Any*

dictionary one consults defines "just" as "honorable and fair in dealings and actions," "consistent with moral right," and "valid within the law." Such a meaning is incompatible with Steven's knowing and purposeful interference with Murray's right to restitution. Compassion he may have had for his mother, but surely not for Murray.

The bankruptcy court and the BAP mistakenly conflated Steven Bammer's misguided compassion for his mother with the targets of mother and son's injurious scheme. It is wrong to discount the defrauded creditors. Bammer's motive towards his mother is inextricably intertwined with his guile and deceit towards Murray and the other victims of his mother's thefts. At the very least, any compassion he had for his mother was more than negated by his knowing, wrongful, and unjust treatment of her victims. The bankruptcy court's own holding on this score regarding Steven Bammer's knowledge and intent is dispositive and deprives his cause of any justice whatsoever:

> This Court concludes that Murray obtained a judgment of restitution which was docketed in California in April, 1991, shortly after the loan transaction. *Because Murray had also been telephoning Alta Bammer at the time of the loan transaction in November, 1990, the Defendant knew that the obtainment of the loan would necessarily deprive Murray of the immediate ability to satisfy all or a portion of his restitution judgment.* Utilizing the *Gee* analysis, it was foreseeable that the actions complained of would necessarily cause the harm. The Defendant presented no controverting evidence on this issue.

(emphasis added).

■ California Civil Code Sections 3439.04 and 3439.05, for which Steven Bammer was found liable, covers fraud *against creditors.* What the courts below did not adequately recognize is that the debt in this case arises from a judgment of willful fraud, not an ordinary commercial transaction gone sour. Given (1) the corrupt particulars of Steven Bammer's conduct, (2) the finding of the Superior Court of an actual intent to defraud, and (3) the finding of the bankrupt-

cy court that Steven knew that the loan would hurt Murray's right to collect on his restitution judgment, whether the fraud. is "actual" or "constructive" is irrelevant. *See Lawrence T. Lasagna, Inc. v. Foster,* 609 F.2d 392, 396 (9th Cir.1979) (fraudulent conduct by a debtor is a ground for nondischargeability in bankruptcy). Equally irrelevant is the fact that Steven himself did not directly benefit from this scheme. A thief who gives his loot to another is no less a thief. We decline to hold that Steven Bammer had just cause for the knowing, intentional, and damaging fraud he successfully perpetuated against the victims of his mother's felonious embezzlements.

The root of the mistake made by the courts below was to have permitted a purely subjective element, i.e., "compassion," to constitute "just cause or excuse." Neither the courts below nor Steven Bammer have "cited any authority or even made a credible argument that … subjective intent justifies or excuses" behavior that is otherwise wrongful. *In re Gee,* 156 B.R. 291, 295 (Bankr. W.D.Wash.1993), *aff'd in part and rev'd in part,* 173 B.R. 189 (9th Cir.BAP 1994). We can think of no reason consistent with section 523 and the purposes of the Bankruptcy Code to permit a standardless, unmeasurable, emotional, and nonlegal concept such as compassion to negate an identifiably and *legally* wrongful act. The "subjective considerations" referred to in *In re Littleton,* 942 F.2d 551 (9th Cir.1991) were not used by the court to determine "just cause or excuse," but only to measure whether the debtor's acts would have necessarily produced harm— *Cecchini's third* element. *Id.* at 555. Here, the separate question of whether Steven's acts would cause harm was decided *against* Steven by the bankruptcy court in a specific finding.

As a matter of law, Steven Bammer's unprincipled behavior cannot be regarded as "just." To do so would be inconsistent with the basic policy of granting discharge of debts, which is to give the "honest but unfortunate debtor a fresh start." *Brown v. Felsen,* 442 U.S. 127, 128, 99 S.Ct. 2205, 2208, 60 L.Ed.2d 767 (1979). In 1991, the Supreme Court shed light on how this concept of an honest but unfortunate debtor works in the context of section 523, calling it a *limitation,* and saying, "We think it unlikely that Congress, in fashioning the standard of proof that governs the applicability of [section 523(a) ], would have favored the interest in giving perpetrators of fraud. a fresh start over the interest in protecting victims of fraud." *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). We then held in *In re Britton,* 950 F.2d at 606, that the Supreme Court's concerns articulated in *Grogan* against giving the perpetrators of fraud a fresh start over their victims are applicable when deciding pursuant to section 523(a)(6) whether an injury was malicious. *Id.* In so holding, we stated that a goal of the Bankruptcy Code is to protect certain classes of creditors whom a debtor has harmed by egregious conduct.

What Steven Bammer did in this case was neither honest nor the product of misfortune. He and his mother compounded her felonies by manipulating a loan company and disabling her victims from adequately recouping their losses. The fresh start concept was not intended for such a scheme. Accordingly, we hold that the financial injury Bammer inflicted on Murray was malicious, and that Bammer's debt to Murray shall not be discharged in bankruptcy.

REVERSED and REMANDED.