In re Derek THOMASON, Debtor.

**EAST IDAHO FEDERAL CREDIT UNION, Plaintiff,**

v.

**Derek THOMASON, Defendant.**

**Bankruptcy No. 97–41099.
Adversary No. 97–6384.**

United States Bankruptcy Court,
D. Idaho.

Aug. 24, 1998.

Alan C. Stephens, Thomsen and Stephens, Idaho Falls, ID, for plaintiff.

Richard D. Vance, Pocatello, ID, for defendant.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Chief Judge.

Plaintiff East Idaho Federal Credit Union seeks an order determining that its claim against Defendant Derek Thomason, a Chapter 7 debtor, should be excepted from discharge, or that Defendant should be denied a bankruptcy discharge. The Court conducted a trial in this adversary proceeding on August 13, 1998. The Court has now considered the evidence and testimony adduced at trial, and the arguments of the parties. This Memorandum constitutes the Court's findings of fact and conclusions of law. F.R.B.P. 7052.

*Facts.*

Plaintiff made a loan to Defendant and his former spouse, Tammy Thomason, to purchase a pickup in 1994. Defendant was divorced in March, 1996, and the decree awarded him ownership of the pickup and obligated him to pay Plaintiff's loan. Defendant then requested that Plaintiff refinance the loan in his name only. Plaintiff agreed, and in July, 1996, Defendant executed a new note and security agreement in Plaintiff's favor. The new loan was used to pay off the prior debt, with the pickup to continue as security for the refinanced obligation.

Less than a month later, an employee of the Plaintiff, unaware that the pickup was to continue as security for Defendant's new loan, mistakenly "signed off" Plaintiff's lien on the title to the pickup and mailed the title certificate to Tammy Thomason. While there is some conflict in the evidence, it appears that Tammy gave the letter containing the title to Defendant.

When he received the title certificate, Defendant assumed, he says, that because the title had been "signed off," Plaintiff had elected to release its lien in the pickup, and that his loan with Plaintiff was now an unsecured "signature loan." Defendant testified that he had previously purchased a vehicle with a signature loan, and that he felt that he had a good credit record with Plaintiff, which were both reasons to explain Plaintiff's actions.

Defendant continued making payments on the loan. In May, 1997, Defendant traded in the pickup on a new one. Plaintiff was eventually notified that the insurance coverage on the truck had been canceled, and in response to Plaintiff's inquiries, Defendant told them he had disposed of the truck.

Defendant filed for Chapter 7 relief in October, 1997.

*Discussion.*

Based upon Defendant's actions in disposing of the pickup, Plaintiff suggests its claim against Defendant should be excepted from discharge as a "willful and malicious injury by the debtor to ... the property of another entity." 11 U.S.C. § 523(a)(6). Plaintiff also wants Defendant's discharge denied arguing that "the debtor, with intent to hinder, delay or defraud a creditor ... transferred ... property of the debtor, within one year prior to the filing of the petition...." 11 U.S.C. § 727(a)(2)(A). Defendant argues that his actions were not intentionally wrongful since, because of Plaintiff's error, he mistakenly, but in good faith, believed that Plaintiff no longer desired a security interest in the pickup.

▮ To except a debt from discharge under § 523(a)(6), a creditor must prove, by preponderance of the evidence, *see Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), that the debt arose through "willful and malicious injury by the debtor." The Supreme Court recently addressed the applicable standard of proof under § 523(a)(6). *Kawaauhau v. Geiger*, —— U.S. ——, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). In order for an act to be willful, the act must be akin to that of an intentional tort under state law, in that the actor must intend the consequences or injury resulting from the act rather than just the act itself. *Id.* at ——, 118 S.Ct. at 977. This holding modifies the previous standard applicable in the Ninth Circuit, which required only an intentional act, rather than an intended injury. *Id.; See also Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791 (9th Cir.1997) and *Impulsora Del Territorio Sur, S.A., v. Cecchini (In re Cecchini)*, 780 F.2d 1440, 1443 (9th Cir. 1986). This new standard requires a debtor

to commit more than a reckless or negligent act.

 Under § 727, a debtor's discharge may be denied when the debtor transfers property "with intent to hinder, delay, or defraud a creditor...." 11 U.S.C. § 727(a)(2). "Section 727's denial of discharge is construed liberally in favor of the debtor and strictly against those objecting to discharge." *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342 (9th Cir.1986). The Court must find an actual intent to defraud on behalf of the debtor, as constructive fraudulent intent can not be used to deny the debtor a discharge under § 727(a)(2). *Id.* Circumstantial evidence or inferences from the debtor's conduct can, however, be used to establish intent. *Id.* at 1343.

No doubt, Defendant's conduct here is subject to criticism. Less than a month before, Defendant had signed a security agreement granting Plaintiff a continuing security interest in the vehicle to secure his refinanced loan. In spite of this, Defendant blissfully presumed Plaintiff had undergone a change of heart and was now willing to give him unsecured credit. Defendant's assumption was naive. However, on this record, the Court can not conclude that, as required by the statutes and case law, in making this assumption and trading in the pickup, Defendant acted either willfully and maliciously, or with an intent to defraud Plaintiff.

Based upon his past experiences in purchasing vehicles and in his relationship with Plaintiff, the Court finds Defendant genuinely believed that Plaintiff had released its lien. He did not dispose of the truck with the intent to injure or harm Plaintiff; he traded in the pickup because he thought, mistakenly as it turns out, that he was free to do so. Prudence should have dictated that Defendant inquire with Plaintiff about his receipt of the title under these circumstances. His failure to do so, while perhaps negligent, does not rise to the level of intentional misconduct.

Congress did not intend that Defendant be punished for his naivety under these facts. Defendant is entitled to a bankruptcy discharge of his debts, including that of the Plaintiff. A separate judgment will be entered.