In re Gregory A. ENDICOTT, Tammy K. Endicott, Debtors.

Spokane Railway Credit Union, a Washington corporation, Plaintiff,

v.

Gregory A. Endicott and Tammy K. Endicott, husband and wife and the community composed thereof, Defendants.

Bankruptcy No. 99–21507.
Adversary No. 00–6107.

United States Bankruptcy Court, D. Idaho.

Oct. 26, 2000.

## MEMORANDUM OF DECISION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

TERRY L. MYERS, Bankruptcy Judge.

### INTRODUCTION

Spokane Railway Credit Union, now operating under the name Numerica Credit Union ("Plaintiff") seeks a determination that a debt owed by chapter 7 debtors Gregory and Tammy Endicott ("Debtors" or "Defendants") is nondischargeable under § 523(a)(6).[1] Trial was held on September 25, 2000, and the matter taken under advisement.

Having evaluated the evidence, the arguments of the parties and the applicable authorities, the Court determines that the subject debt is dischargeable. Upon the following findings of fact and conclusions of law, Fed.R.Bankr.P. 7052, judgment will be entered for the Defendants.

### FINDINGS OF FACT

On July 15, 1996, the Defendants sought financing of $12,500 from Plaintiff in order to purchase a boat with motor and a boat trailer from an individual in Montana. They signed an agreement[2] on July 16, 1996 granting Plaintiff a security interest in the boat and trailer to collateralize the loan. This was the only transaction, secured or unsecured, the Defendants had with Plaintiff. However, the Defendants had entered into several other secured transactions in the past and understood generally that collateral could be recovered by a creditor through repossession or voluntary surrender in the event the debt could not be paid. They also understood they would be liable for any shortfall if the collateral was repossessed and sold but did

Stanley E. Perdue, Spokane, Washington, and Robert Greer, Coeur d'Alene, ID, for Plaintiff.

Stephen B. McCrea, Coeur d'Alene, ID, for Defendants.

---

1. This Court has jurisdiction over the matter. 28 U.S.C. § 1334(b). This is a core proceeding. 28 U.S.C. § 157(b)(2)(I). Venue lies properly. 28 U.S.C. § 1409.

2. A copy of this document, entitled "Disclosure Statement and Agreement," was introduced as Exhibit 2. The provisions on the second page of the document (apparently the reverse of the face page) are illegible. However, the parties do not contest the execution of the agreement or that, through it, the Debtors granted a security interest.

not generate enough value to satisfy the repossessing creditor's claim.

The funds were advanced and the boat and trailer acquired. But while the Defendants agreed to collateralize the debt with these items and executed the security agreement, Plaintiff failed to perfect the security interest.

The Debtors paid on the obligation until June, 1999, when they fell into default. Plaintiff sent out standard "past due" letters, and attempted to contact the Debtors by phone. Plaintiff, which has an internal policy in favor of "work outs" over repossessions, wanted to determine if the Defendants would or could cure the delinquency.

However, Mrs. Endicott informed Plaintiff that payment was unlikely, and that her husband had gone to Alaska for work. Mrs. Endicott also indicated that she believed the boat and trailer were at the home of her in-laws in Washington, and would be surrendered.

During July and into early August, 1999, the Defendants made several attempts to surrender the boat and trailer to Plaintiff. They indicate that, at first, they were told that Plaintiff was more interested in getting the loan back to a current and performing status than in recovering the collateral. This is consistent with testimony of Plaintiff's employees and the policy of this creditor towards its customers.

However, the Defendants say Plaintiff's position later became more explicit, and that they were advised that the credit union did not want the collateral, despite several offers of the Defendants to make it available for pick-up or even to bring it to Plaintiff's offices. The Defendants were told by Plaintiff that due to a paperwork error, the loan was "unsecured" and that Plaintiff "couldn't take the boat even if it wanted to."

Barbara Bartlett was the responsible loan officer for Plaintiff. She contends that she never indicated that the loan was "unsecured" but merely that it was "unperfected." It is not apparent, however, that she made this distinction known to the Debtors.

She admitted her focus was on bringing the loan current rather than obtaining surrender of the boat and trailer. Still, she indicates, the credit union would have accepted the boat and trailer if the Defendants would, at the time of surrender, sign the documents necessary for perfection. The testimony does not establish that the Defendants were advised they could so surrender the collateral so long as they also executed additional documentation to cure the error.[3]

The Defendants decided that their efforts at trying to make the collateral available for repossession or surrender had failed. They believed that Plaintiff had made it clear that they would look to the Debtors, and not the collateral, for satisfaction of the debt. Their belief was enhanced when Mrs. Endicott was told that Plaintiff would turn the matter over to its counsel and that garnishment of Mrs. Endicott's wages was possible.

The Defendants thus concluded that the creditor had deemed itself unsecured, and would not accept the collateral even if provided. The Debtors had a number of other secured debts which had fallen into default at about the same time. They either surrendered collateral to those creditors or had their property repossessed, thus highlighting the unusual nature of Plaintiff's approach.

The Defendants' financial situation was bleak, and they sold the boat and trailer to a third party for $5,000, using the installment payments received to pay mortgage

---

**3.** Ms. Bartlett did not have this discussion with the Defendants. Plaintiff's file notes indicate Ms. Bartlett spoke about this alternative with another of Plaintiff's employees in the Coeur d'Alene branch. The implication is that this other employee communicated with the Defendants about executing documentation at the time of surrender. That employee did not testify.

defaults and living expenses. The Defendants did not pay to Plaintiff any of the proceeds from the sale of the boat and trailer.[4]

## DISCUSSION

Plaintiff believes that the Defendants' conduct amounts to a "conversion" of property in which Plaintiff had a legally cognizable interest, and that this conduct runs afoul of § 523(a)(6) which provides that a discharge will not be effective as to "any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity."

■■■■ This Court not long ago summarized:

To except a debt from discharge under § 523(a)(6), a creditor must prove, by a preponderance of the evidence, *see Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), that the debt arose through "willful and malicious injury by the debtor." The Supreme Court recently addressed the applicable standard of proof under § 523(a)(6). *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). In order for an act to be willful, the act must be akin to that of an intentional tort under state law, in that the actor must intend the consequences or injury resulting from the act rather than just the act itself. *Id.* at 977. This holding modifies the previous standard in the Ninth Circuit, which required only an intentional act, rather than an intended injury. *Id. See also Murray v. Bam-*

*mer (In re Bammer)*, 131 F.3d 788, 791 (9th Cir.1997) and *Impulsora Del Territorio Sur, S.A. v. Cecchini (In re Cecchini)*, 780 F.2d 1440, 1443 (9th Cir.1986). This new standard requires a debtor to commit more than a reckless or negligent act.

*East Idaho Federal Credit Union v. Thomason (In re Thomason)*, 225 B.R. 751, 98.3 I.B.C.R. 77 (Bankr.D.Idaho 1998).[5] *See also Aldrich v. Belmore (In re Belmore)*, 226 B.R. 433, 98.1 I.B.C.R. 4 (Bankr.D.Idaho 1998) (addressing *Geiger's* effective reversal of *Cecchini*).[6]

### A. The *Geiger* standard

#### 1. "Deliberate or intentional injury"

The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a **deliberate or intentional injury,** not merely a deliberate or intentional act that leads to injury.

*Geiger,* 523 U.S. at 61–62, 118 S.Ct. at 976–77 (emphasis supplied). The Supreme Court compared willful injury to intentional torts which generally require that the actor intend "the consequences of an act" and not just the "act itself." 523 U.S. at 61–62, 118 S.Ct. at 977 (quoting Restatement (Second) of Torts, § 8A, Comment a, p. 15 (1964)). The Court rejected the concept that all intentional acts which cause injury were willful injuries since such an approach would make nondischargeable

---

4. By the time of the sale, the Debtors had already consulted with bankruptcy counsel. They testified that they did not make any payments to Plaintiff since they had been advised payments to past-due unsecured creditors would be preferences. There was no indication that they talked to their counsel about the propriety of selling the collateral.

5. The standard of proof under *Grogan* is, as *Thomason* notes, a preponderance of the evidence. *See also Branam v. Crowder (In re Branam)*, 226 B.R. 45, 52 (9th Cir. BAP 1998). Nevertheless, exceptions to discharge are strictly construed against the objecting

creditor and in favor of the debtor in order to effectuate the fundamental policy of providing debtors a fresh start. *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir.1992).

6. Plaintiff's arguments were based on *Cecchini*, not current law. The Court will not presume that, if the proper standard were known, Plaintiff would have folded its hand. The Court believes that Plaintiff, rather than abandoning the cause, would elect to attempt to persuade the Court that the Debtors' conduct satisfies the *Geiger* test. The Court therefore evaluates the evidence presented in light of the proper standards.

virtually all knowing breaches of contract. *Id.*[7]

The "deliberate or intentional injury" requirement of *Geiger* has recently received additional attention in *Baldwin v. Kilpatrick (In re Baldwin)*, 245 B.R. 131 (9th Cir. BAP 2000). *Baldwin* acknowledged that *Geiger* overruled *Cecchini*. 245 B.R. at 135. It noted, though, that the Supreme Court "did not specify what level of intent is necessary to satisfy the requirement that there be a 'deliberate or intentional injury.'" *Id.*

The Panel, in searching for the answer, focused on the Restatement (Second) of Torts, which had been discussed in *Geiger*:

> Section 8A of the Restatement provides that "[t]he word 'intent' is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A (1964). Comment "a" to this section states that

when an actor knows or is substantially certain that the consequences will result from his act and continues despite this knowledge, the law will treat that actor the same as if he had in fact meant to produce the result.

245 B.R. at 135.[8]

■ The Panel observed that both the Fifth Circuit in *Miller v. J.D. Abrams, Inc. (Matter of Miller)*, 156 F.3d 598 (5th Cir. 1998), cert. denied, 526 U.S. 1016, 119 S.Ct. 1249, 143 L.Ed.2d 347 (1999) and the Sixth Circuit in *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455 (6th Cir. 1999) have embraced the Restatement approach and require, in a § 523(a)(6) action, proof of an intentional act through "either objective substantial certainty or subjective motive." 245 B.R. at 136, citing *Miller*, 156 F.3d at 603.[9] *Accord, Conte v. Guatam (In re Conte)*, 33 F.3d 303, 308 (3rd Cir.1994) ("[U]nder the common law the word 'intent ... denote[s] that the actor desires to cause the consequences of his act, or that he believes that the conse-

---

**7.** The Ninth Circuit previously made clear that "[a]n intentional breach of contract is excepted from discharge under § 523(a)(6) only when it is accompanied by malicious and willful tortious conduct." *Riso*, 978 F.2d at 1154.

**8.** The Panel notes that a draft of Restatement (Third) of Torts, not yet approved by the American Law Institute, clarified the definition of "intentional" by expressly focusing on these two lines of inquiry: purpose (acting with desire to bring about the harm) and knowledge (engaging in conduct believing that harm is substantially certain to result). *Id.* at n. 3

**9.** There are those who have criticized the articulation of an *objective* substantial certainty standard. See, e.g., Via Christi Regional Medical Center v. Englehart (In re Englehart), 229 F.3d 1163, 2000 WL 1275614, at *2–3 (10th Cir.2000) (unpublished opinion) (*Miller* wrongly adopts an "objective notion of substantial certainty" which allows the factfinder to evaluate the likelihood of injury rather than requires evaluation of the debtor's subjective knowledge or belief, and *Baldwin* ignores the difference.) *But see, Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916, 922(6th

Cir. BAP 2000) ( *Miller, Markowitz,* the Eighth Circuit in *Geiger,* and *Baldwin* all employ the same "substantially certain" standard.)

Any error in *Miller* and those decisions embracing it can be avoided if the fact-finder focuses not so much on the phrasing of the test but on the *debtor's* knowledge that injury was substantially certain to result. The use of the term "objective" is not talismanic nor at odds with *Geiger* if it is viewed as simply recognizing that a debtor will have to deal with any direct or circumstantial evidence which would indicate that he must have had a substantially certain belief that his act would injure, notwithstanding any subjective denial of such knowledge. *Accord, In re Harr,* 2000 WL 620799, at *6 (Bankr.S.D.Ohio March 24, 2000) ("Given that a debtor is unlikely to admit that he or she was substantially certain that the injury in question would result from his or her acts, such understanding can be established through circumstantial evidence.") (citations omitted). The court does not substitute its view of what was substantially certain to result for the *debtor's* understanding. Rather, the court considers all probative evidence which relates to what the debtor knew, including what he must have known (i.e., objectively) as well as what he admits to having known.

quences are substantially certain to result from it.' ")

■ *Baldwin* expressly adopts the standard that, "unless 'the actor desires to cause [the] consequences of his act, or ... believes that the consequences are substantially certain to result from it,' ... he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Id.*, citing *Markowitz*, 190 F.3d at 463. This is consistent with the language by which the Supreme Court came the closest to defining intent, when it characterized an "unintentional" injury as "neither desired nor in fact anticipated by the debtor." 523 U.S. at 62, 118 S.Ct. at 977.

■ *Harry Ritchie's Jewelers, Inc. v. Chlebowski (In re Chlebowski),* 246 B.R. 639 (Bankr.D.Or.2000) recently held:

As noted, the Bankruptcy Appellate Panel for the Ninth Circuit has adopted the analytical approach set out in *Miller.* Congress established the appellate panels in order to promote uniformity of decision within the circuits. It follows that BAP precedent should be followed by Bankruptcy Courts in the absence of any contrary authority from the District Court. *In re Proudfoot,* 144 B.R. 876, 878 (9th Cir. BAP 1992). Moreover, I believe that the formulation used in *Miller* and *Baldwin* more accurately reflects the language of § 523(a)(6) and the holding of the Supreme Court in *Geiger.* Accordingly I hold that a claim is excepted from discharge under Code § 523(a)(6) if it is based on an injury caused by a deliberate act of the debtor, undertaken with a subjective motive to cause harm, or under circumstances where there is an objective and substantial certainty of harm from the act.

246 B.R. at 645 (footnote omitted.)

This Court agrees, and will apply *Baldwin's* articulation of the § 523(a)(6) stan-

dard, with its dual focus on the debtor's purpose—the desire to cause harm or injury—and the debtor's knowledge—the belief such harm or injury, the consequence of his acts, was substantially certain to result.

### 2. A missing second prong?

Another aspect of *Geiger* merits further comment. The Supreme Court's discussion appeared to focus more on the "willful" than on the "malicious" aspect of § 523(a)(6). Some view *Geiger's* interpretation of § 523(a)(6) as "unified" to such a degree that this second prong of the statute is lost. *See, e.g., Fischer v. Scarborough (In re Scarborough),* 171 F.3d 638, 641 (8th Cir.1999) (holding that "willful and malicious" creates a dual standard); *In re Caton,* 157 F.3d 1026, 1030 (5th Cir.1998). *See also, Chlebowski,* 246 B.R. at 643–44; *Moffitt,* 252 B.R. at 921, n. 5. The Panel in *Molina v. Seror (In re Molina),* 228 B.R. 248, 251 (9th Cir. BAP 1998) stated:

[*Geiger*] focused on the statutory term "intentional," and did not explicitly address its companion, "malicious." We need not resolve in this case whether the fourth element of the Ninth Circuit test [from *Cecchini* and *In re Bammer,* 131 F.3d 788, 791 (9th Cir.1997) ] retains any independent viability.[10]

■ If "malicious injury" requires separate evaluation, the Court has clear guidance. Ninth Circuit law has long focused on the absence of just cause or excuse as establishing maliciousness. *Cecchini,* 780 F.2d at 1443; *Bammer,* 131 F.3d at 792.[11] According to *Bammer,* a showing of biblical malice (personal hatred, ill-will or spite) is not required. 131 F.3d at 791.

Often it is of little moment whether maliciousness is viewed as a separate factor,

---

10. That fourth element addressed malice, and required that the predicate act be done "without just cause or excuse." *Cecchini,* 780 F.2d at 1443.

11. Accord, *Moffitt,* 252 B.R. at 923 ("[A] person is deemed to have acted maliciously when that person acts in conscious disregard of his duties or without just cause or excuse.")

as opposed to subsumed within *Geiger's* articulation. For example, *Chlebowski* determined:

> Defendant would not benefit from adoption of the standard employed by *Slosberg*. Pawning the ring was substantially certain to injure plaintiff's security interest, *and was done without justification.*

246 B.R. at 645, n. 4 (emphasis supplied).[12]

■ In practice, the very same evidentiary facts which relate to a debtor's subjective purpose (his intent or desire to cause an injury or harm) or knowledge (his substantial certainty that such injury or harm would follow the act) will also relate to whether the debtor had a just cause or excuse for the conduct.

Until the issue identified but left open in *Molina* is resolved, I conclude that a § 523(a)(6) plaintiff must meet the standard of *Baldwin* as above set forth. The Ninth Circuit's post-*Geiger* case law does not expressly require a separate inquiry into, or proof of, malice. But, neither does it prohibit the plaintiff or defendant from introducing evidence related to the question of "just cause or excuse" as they might desire.

## B. Application to conversion cases

The question of conversion of collateral under § 523(a)(6) arises with some regularity. Such cases present a unique conceptual difficulty. As stated in *Avco Financial Services of Billings v. Kidd (In re Kidd)*, 219 B.R. 278 (Bankr.D.Mont.1998):

> The problem with conversion cases ... is that rarely are the debtors acting out of a desire to injure the creditors, even though the injury to the creditor, although not desired, is almost always substantially certain to result from a

debtor's actions. Thus, the key in conversion cases is to analyze each set of circumstances on a case-by-case basis to determine whether the conversion is in the nature of an intentional tort or whether the conversion is a result of a negligent or reckless tort—but not willful or malicious.

219 B.R. at 284. That court therefore concluded, consistent with *Geiger's* focus and reasoning:

> [A] creditor, in order to prevail under § 523(a)(6), must demonstrate by a preponderance of the evidence, that the debtor desired to cause the injury complained of, or that the debtor believed that the consequences were substantially certain to result from the debtor's acts. In other words, in the case of a conversion, a creditor must show that a debtor, when converting collateral, did so with the specific intent of depriving the creditor of its collateral or did so knowing, with substantial certainty, that the creditor would be harmed by the conversion. This subjective test focuses on whether the injury was in fact anticipated by the debtor and thus insulates the innocent collateral conversions from non-dischargeability under § 523(a)(6).

219 B.R. at 285.

*Thomason,* like *Kidd,* was a conversion case. There the debtor received, by mail from the creditor credit union, the title to his truck with the lien removed by the creditor's endorsement. However, the debtor knew he had not yet finished paying the underlying debt. The Court found the debtor's reliance on this boon and his subsequent conduct "subject to criticism." It characterized as "naive" the debtor's assumption that the credit union would voluntarily surrender its secured position having once before denied the debtor an

---

**12.** *In re Slosberg,* 225 B.R. 9, 17–22 (Bankr. D.Me.1998) set out a two-element test excepting a claim from discharge if it is premised on an act which (1) was intended to cause harm, or was substantially certain to do so ("willful") and (2) was not justified under the circumstances ("malicious"). *Mabank Bank v.*

*Grisham (In re Grisham),* 245 B.R. 65, 71–74 (Bankr.N.D.Tex.2000) also followed the two-element approach. *Grisham* sets out a hypothetical, 245 B.R. at 71, that might well be one of the best arguments for requiring proof of malice as a separate and clear second prong of § 523(a)(6).

unsecured loan. Yet it did not find the debtor's conduct evidenced a willful and malicious injury to the creditor:

> Based on his past experiences in purchasing vehicles and in his relationship with Plaintiff [creditor], the Court finds that Defendant [debtor] genuinely believed that Plaintiff had released its lien. He did not dispose of the truck with the intent to injure or harm Plaintiff; he traded in the pickup because he thought, mistakenly as it turns out, that he was free to do so. Prudence should have dictated that Defendant inquire with Plaintiff about his receipt of the title under these circumstances. His failure to do so, while perhaps negligent, does not rise to the level of intentional misconduct.

225 B.R. at 753, 98.3 I.B.C.R. at 78.

■ *Thomason* is clearly consistent with *Kidd* in its approach, and this approach is sound. Not all conversions necessarily bespeak the same type, nature or degree of intent. While a debtor's actions may deprive a creditor of access or recourse to collateral and thus amount to a conversion within the accepted definition,[13] nothing inherent in that conduct explains whether the debtor had the purpose (the subjective desire, intent or motive to injure the creditor) or the knowledge (the substantial certainty of the consequent harm to the creditor) necessary to support denial of dischargeability of that debt. *Id.*

■ The ultimate results in both *Kidd* and *Thomason* reflect this. The mere fact that in each case a conversion occurred was not itself determinative of the question of dischargeability of the resultant debt under § 523(a)(6).

The Court in *Geiger,* 523 U.S. at 63–64, 118 S.Ct. at 978, cited *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934) with approval. *Kidd* and *Thomason* are rooted in *Davis'* soil:

> There is no doubt that an act of conversion, if willful and malicious, is an injury ... within the scope of this exception .... But a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice. There may be an honest but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a willful and malicious one.

293 U.S. at 332, 55 S.Ct. 151 (citations omitted).

## CONCLUSIONS OF LAW

■ In applying the authorities to the evidence, the Court concludes that the Defendants here acted without the requisite subjective intent to cause harm or injury or belief that harm or injury was substantially certain to result.[14]

The Defendants had a basis upon which to believe that Plaintiff, through its own review of the documents and its own informed and conscious decision, had elected to forgo the collateral and pursue the debt. The actions of Plaintiff in responding to the Defendants' entreaties to surrender the boat and trailer were unlike the conduct of several other secured creditors, all of whom accepted tender of collateral or repossessed their collateral. Even if

---

**13.** *Petralia v. Jercich (In re Jercich),* 243 B.R. 747, 751 (9th Cir. BAP 2000) defined conversion as "an act or series of acts of willful interference, without lawful justification, with any chattel in a manner inconsistent with another's right, whereby that other person is deprived of the use and possession of the chattel." *Id.,* at n. 3, quoting Black's Law Dictionary 333 (7th ed.1999).

**14.** To the extent that the requirement of "malicious injury" is separate rather than subsumed in *Geiger's* formulation, the Court would also conclude just cause or excuse has been established.

Plaintiff's employee used the term "unperfected" rather than "unsecured" when talking with the Defendants, the tenor of the communications between the parties in July and August, 1999 supports the Defendants' conclusion, though mistaken, that normal impediments to liquidation of property standing as collateral for a debt had been removed. The Court finds the Debtors gained "an honest but mistaken belief, engendered by a course of dealing" that they had the ability to liquidate Plaintiff's collateral.

The debt of the Defendants to Plaintiff does not represent or arise from a willful and malicious injury to Plaintiff or its property interests within § 523(a)(6). The debt is dischargeable.

Counsel for the Defendants shall submit a proposed form of judgment consistent herewith.