In re: John NORDSTROM & Lois M. Nordstrom, Debtors.

Aaron M. Weule, Appellant,

v.

John Nordstrom, Appellee.

No. 99–55843.

B.A.P. No. SC–98–01506–JoRyGr.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 1, 2000.

Decided May 7, 2001.

Before B. FLETCHER, O'SCANNLAIN, and GOULD, Circuit Judges.

## MEMORANDUM *

John D. Nordstrom ("Nordstrom") owned and operated two related entities, International Insurance Underwriters, Inc. ("IIU") and International Insurance Un-

derwriters of Washington, Inc. ("IIUW"). IIU was a licensed insurance broker in the State of California. IIUW was the managing general agent of several alien insurance companies not admitted in California but nevertheless selling automobile insurance in the state.

Aaron Weule ("Weule") was injured in an automobile accident in Oakland, California. The driver of the other automobile, Mr. Moscoso ("Moscoso"), had purchased an insurance policy from Kingham Atlantic National Insurance Company ("KAN"), a company incorporated in the British Virgin Islands. KAN sold insurance in California through IIUW, its managing general agent.

Weule sued Moscoso in California state court for negligence, and obtained a default judgment of approximately $45,000. In trying to recover the judgment from Moscoso and his insurance carrier, Weule discovered that KAN was insolvent. Weule filed a state court complaint against Nordstrom, IIU, and IIUW, alleging that Nordstrom had intentionally engaged in a fraudulent scheme to sell underfunded insurance policies in violation of California law.

Several years later, but during the continued pendency of the state case, Nordstrom filed for bankruptcy protection under Chapter 7. In response, Weule severed him from the state court action. A default judgment was subsequently entered in state court in favor of Weule against IIU and IIUW. The state court found that these companies had violated the California Insurance Code by, among other things, fraudulently marketing insurance policies from undercapitalized, non-admitted insurance companies. The state court found that IIU and IIUW were liable to

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

Weule for $32,500 in compensatory damages, $85,000 in attorneys' fees, and interest and costs. Additionally the state court found that IIU and IIUW were liable for $500,000 in punitive damages.

Weule filed this adversary proceeding against Nordstrom in bankruptcy court, alleging that his state court judgment was not dischargeable pursuant to §§ 523(a)(2)(A), (a)(4), and (a)(6).[1] Upon Nordstrom's motion, the bankruptcy court dismissed Weule's claims under §§ 523(a)(2)(A) and (a)(4) for failure to state a claim upon which relief could be granted. Subsequently, a short bench trial was held to resolve the (a)(6) claim. At about the same time, the U.S. Attorney brought criminal proceedings against Nordstrom for conspiracy to defraud.

After the bench trial, the bankruptcy court dismissed Weule's remaining claim for nondischargeability under § 532(a)(6), and a few days later, Nordstrom pled guilty to the criminal charges. In light of this development, Weule made a motion to the bankruptcy court for reconsideration that was denied. Weule appealed the decisions of the bankruptcy court to the Bankruptcy Appellate Panel ("BAP"), which issued a Memorandum affirming the bankruptcy court.

■■■ We review de novo a decision of the BAP. *United States Internal Revenue Serv. v. Palmer (In re Palmer)*, 207 F.3d 566, 567 (9th Cir.2000). This court applies the same standard of review as did the BAP to the underlying judgment of the Bankruptcy Court. *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir.1996). We review the availability of collateral estoppel de novo. *In re Palmer*, 207 F.3d at 567–68. Whether a claim is nondischarge-

able is a mixed question of law and fact reviewed de novo. *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 792 (9th Cir.1997) (en banc).

## I.  Collateral Estoppel

■■■ Weule argues that three earlier decisions by various California courts should have been given preclusive, collateral estoppel effect in the bankruptcy court. Principles of collateral estoppel apply in dischargeability proceedings. *See Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Because the previous rulings occurred in state court, we apply California's collateral estoppel rules. *First Nat'l Bank v. Russell (In re Russell)*, 76 F.3d 242, 244 (9th Cir.1996).

> Under California law, [a] party is collaterally estopped from relitigating an issue previously adjudicated if: (1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the estoppel is asserted was a party, or in privity with a party, to the previous suit.

*In re Russell*, 76 F.3d at 244–45 (internal quotation marks deleted) (quoting *In re Joshua J.*, 39 Cal.App.4th 984, 46 Cal. Rptr.2d 491, 497 (1995)).

### A.  State Civil Suit

■■■ We agree with the BAP and the bankruptcy court that the April 9, 1997 judgment in Weule's state civil suit has no collateral estoppel effect on his adversary proceeding against Nordstrom because Nordstrom was no longer a defendant in the litigation when the judgment was issued. Weule had "severed" him from the

---

**1.** References to "chapter", "section", " § ", or "code" are to the Bankruptcy Code, 11

U.S.C. § et. seq. unless otherwise indicated.

case earlier in 1997. Likewise, the state court's earlier order granting Weule's motion for summary adjudication does not preclude the bankruptcy court's independent consideration of any issue. Although Nordstrom was still a party to the suit when this order was issued, we cannot give collateral estoppel effect to this interlocutory order because there was no final judgment on the merits against Nordstrom.[2]

### B. CDI Complaint

■ From February 26, 1993 to July 9, 1993, the California Department of Insurance ("CDI") investigated Nordstrom and his many related companies and ultimately sued in state court to enjoin him from further violating various provisions of the California Insurance Code. Nordstrom, in turn, filed a lawsuit, on behalf of himself and his companies, seeking an injunction to block Cease and Desist orders that had been lodged against him by the CDI. This "exchange" of litigation culminated in the state court's Order granting the CDI's application for a preliminary injunction.

Following this defeat, Nordstrom capitulated and the parties agreed to a stipulated Permanent Injunction and Judgment. Weule claims that this judgment should have had a preclusive effect on the proceedings in bankruptcy court. However, the signed stipulation explicitly states that

John D. Nordstrom, Robert M. Thul and IIU of Washington deny any wrongdoing whatsoever and deny specifically the allegations of the Department of Insurance in the pending Cease and Desist, Accusation and Suspension proceedings before the Department of Insurance as

well as the proceedings in these consolidated Cases.

Nonetheless, John D. Nordstrom, Robert M. Thul and IIU of Washington, with the advice of counsel, are willing to forego their right to full evidentiary hearings on all the department's charges, and their right to a trial on the merits and they seek to bring all of these matters to a final conclusion.

This stipulation, signed by both parties and entered into the record by the court, belies any argument that the issues of intent or liability were "necessarily litigated." Thus, this judgment has no preclusive effect.

### C. Guilty Plea

■ Weule suggests also that Nordstrom's guilty plea should have a collateral estoppel effect on this litigation. We disagree. The California Supreme Court has held that a guilty plea is not given collateral estoppel effect. *Teitelbaum Furs, Inc. v. Dominion Ins. Co.*, 58 Cal.2d 601, 25 Cal.Rptr. 559, 375 P.2d 439, 441 (1962). This is because a guilty plea, unlike a criminal conviction after trial, "may reflect only a compromise or a belief that paying a fine is more advantageous than litigation." *Id.* We affirm the bankruptcy court's decision not to give the guilty plea preclusive effect.

### II. Dismissal of the (a)(2)(A) and (a)(4) Claims

We affirm the BAP's decision to affirm the bankruptcy court's dismissal of Weule's claims of nondischargeability un-

---

2. As we discuss below, Nordstrom may have been the alter ego of IIU and IIUW. If Weule could have proved that the corporate veil should have been pierced, it might have affected the foregoing collateral estoppel analysis. However, because we cannot decide whether the corporate veil should be pierced

on the current record, we assume that Nordstrom is not the alter ego of the companies for this analysis. We express no opinion about whether the state court judgment has any preclusive effect against Nordstrom if he is the alter ego of IIU and IIUW.

der §§ 523(a)(2)(A) and (a)(4). Weule failed to allege in his complaint facts to support either of these claims.

■ Weule cannot allege that Nordstrom made a representation to him, which is a requirement of subsection (a)(2)(A). *Apte v. Japra (In re Apte)*, 96 F.3d 1319, 1322 (9th Cir.1996). Nor can Weule support such a claim based on Nordstrom's representations to Moscosco, the holder of the insurance policy. We need not decide whether California law is so broad that a claim of fraud can exist under it absent a direct representation, because (a)(2)(A) is a matter of federal law.

■ Nor has Weule alleged a claim for nondischargeability under subsection (a)(4) because it only applies to claims "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Under bankrupcty law, an express or technical trust must create the fiduciary relationship. *In re Lewis*, 97 F.3d at 1185. Weule cannot show such a close fiduciary relationship between himself and Nordstrom.

### III. Admissibility of Documentary Evidence as Proof of Alter Ego

#### A. Tax Returns

■ Evidentiary rulings are reviewed for abuse of discretion. *Norris v. Sysco Corp.*, 191 F.3d 1043, 1047 (9th Cir. 1999). The bankruptcy court's decision to exclude income tax returns produced by Nordstrom was an abuse of discretion, and the BAP erred in affirming the exclusion. Weule attempted to introduce two sets of income tax returns at trial. The first set, consisting of exhibits 58, 59, 76, 77, and 78, were obtained by Weule during discovery directly from Price Waterhouse, Nordstrom's accounting firm but not a party to the lawsuit ("Price Waterhouse returns"). Weule had not designated any Price Wa-

terhouse witnesses who could authenticate these exhibits, and the bankruptcy court excluded the documents for this reason. This was not an abuse of discretion.

■ The second of set of income tax returns were designated as exhibits 38 to 50. This set consisted of personal income tax returns for Nordstrom and his wife and S–Corporation income tax returns for IIU and IIUW, covering the years 1990 to 1995 ("Nordstrom returns"). These tax returns had been handed over by defense counsel during an examination of Nordstrom conducted pursuant to Federal Rule of Bankruptcy Procedure 2004 ("2004 examination"). Nordstrom argues that even though he *produced* the returns, because Price Waterhouse *prepared* them, a Price Waterhouse representative had to authenticate the documents. We disagree.

Because Weule met his burden of producing "evidence sufficient to support a finding that the [tax forms] in question [were] what the proponent claims," Fed. R. Ev. 901(a), the Nordstrom returns were properly authenticated. All that Weule was required to do was present sufficient evidence to prove a prima facie case. *United States v. Blackwood*, 878 F.2d 1200, 1202 (9th Cir.1989) (involving authentication of tax forms). Prior to the 2004 examination, Weule had requested that Nordstrom bring copies of these tax forms to the examination. Nordstrom's counsel was present at the 2004 examination, and he said, as he handed over the tax returns, "What Mr. Nordstrom has obtained are the tax returns for he [sic] and his wife from '91 to '95, ... from '90 to '95 for International Insurance Underwriters, Inc., d/b/a Specialty Insurance Brokers, ... and federal tax returns for [the years '90—'95] for International Insurance Underwriters of Washington, Inc." During the examination, Nordstrom responded to requests by Weule's counsel to turn his

attention to "IIU's return," or "your return." Nordstrom had obtained these documents from his storage room, turned over these documents in response to Weule's request for tax returns, and then represented them as "tax returns." This suggests that they are what they appear to be. *See Buziashvili v. Inman,* 106 F.3d 709, 716–17 (6th Cir.1997) (decedent's W–2 tax forms were sufficiently authenticated even though "[t]he only foundation laid was her possession of the W–2 forms prior to sending them to her attorney" because "they appeared to be what they purported to be").

Furthermore, the Nordstroms are designated on most, if not all, of the corporations' tax returns as "Tax Matters Persons." Under the tax laws as they existed at the time, this designation meant that the Nordstroms owed the corporation duties to represent it in all tax matters before the IRS, to identify discrepancies in the tax returns, and to initiate appeals to the IRS, and possessed a right to intervene in any tax action involving the corporation. 26 U.S.C. § 6244; 26 U.S.C. § 6231(a)(7); 26 U.S.C. § 6226; *Twenty–Three Nineteen Creekside, Inc. v. Commissioner,* 59 F.3d 130, 131–33 (9th Cir. 1995).

The BAP, and to some extent the bankruptcy court, treated the Price Waterhouse returns and the Nordstrom returns to be part of a single set of unauthenticated evidence. This was an error; although the Price Waterhouse returns were unauthenticated, Weule met his burden of showing that the Nordstrom returns were what he alleged them to be.

■ Nor are the Nordstrom returns inadmissible hearsay. By proffering the tax forms at the 2004 examination, and by verifying the truth of some of the information found in the tax forms, Nordstrom "manifested an adoption or belief in [the] truth" of the information contained in the returns. Fed.R.Evid. 801(d)(2)(B) (adoptive admissions by a party are not hearsay).

## B. Letter to Accountants

■ Weule also appeals the bankruptcy court's decision to exclude a letter purportedly written by Nordstrom to his accountants. Weule did not introduce any testimony or other evidence at trial to demonstrate the document's authenticity. Although Weule now argues that the document is distinctive, and thus authenticated pursuant to Fed.R.Evid. 901(b)(4), the BAP found that Weule did nothing at trial to demonstrate the letter's distinctive features. We agree with the BAP that Weule "was not entitled to simply proffer a document and claim that [Nordstrom] had sent it," and we hold that the bankruptcy court did not abuse its discretion in excluding the letter.

## IV. § 523(a)(6)

Weule's remaining claim for nondischargeability arises under § 523(a)(6). Debts are not dischargeable in bankruptcy if they were obtained "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

## A. Alter Ego

■ Both the bankruptcy court and the BAP held that any proof that IIU or IIUW intended to harm Weule was not attributable to Nordstrom. According to both courts, Weule had presented insufficient evidence to allow them to disregard the corporate form.

■ A lower court's application of the alter ego doctrine is reviewed for clear error. *Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.,* 205 F.3d

1107, 1112 (9th Cir.1999). We apply the law of the forum state in determining whether a corporation is an alter ego of the shareholder. *Towe Antique Ford Found. v. IRS,* 999 F.2d 1387, 1391 (9th Cir.1993). Under California law, alter ego liability will be found when (1) there is such a unity of interest and ownership between the corporation and the controlling individual that their separate personalities no longer exist and (2) the facts are such that inequity will result otherwise. *Mesler v. Bragg Mgmt. Co.,* 39 Cal.3d 290, 216 Cal.Rptr. 443, 702 P.2d 601, 606 (1985).

The bankruptcy court emphasized that Weule did not introduce evidence that Nordstrom neglected corporate formalities or commingled his personal funds with corporate money. As discussed above, the lower courts erred by excluding copies of the corporations' tax returns. These documents show that large sums of money were "loaned" each year from IIU and IIUW to Nordstrom and would probably have been probative of an alter ego relationship. For example, the tax forms show that IIU loaned Nordstrom $660,000 in 1995.

The tax returns suggest that the bankruptcy court should have pierced the corporate veil. However, the record before us is not adequately developed to allow us to rule definitively. What is before us is incomplete.[3] It is difficult to determine to what extent Nordstrom neglected the corporate form or commingled assets based on this partial presentation. Therefore, we remand to the BAP to remand to the bankruptcy court to decide whether IIU and IIUW were alter egos of Nordstrom.

### B. Intent to Injure

In *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), the Supreme Court held that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Id.* at 61, 118 S.Ct. 974 (emphasis in original). Furthermore "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 64, 118 S.Ct. 974. In *Petralia v. Jercich (In re Jercich),* 238 F.3d 1202 (9th Cir.2001), we clarified that "under *Geiger,* the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury *or* that the debtor believed that injury was substantially certain to occur as a result of his conduct." *Id.* at 1208 (emphasis in original). The BAP and bankruptcy court issued their decisions before *Jercich* was filed, and under *Jercich* both courts read *Geiger* too restrictively.

■ The record makes abundantly clear that Nordstrom was at least "substantially certain" that his fraudulent activities would cause injury not only to the motorists covered under the policies issued, but also to third parties who were injured by those motorists. Nordstrom operated a criminal scheme to create wealth for himself and his cohorts, at the expense of these motorists and third parties. These facts fall comfortably within the *Geiger–Jercich* standard of intent. The BAP and the bankruptcy court erred insofar as they held that subjective intent to injure Weule was required.

### CONCLUSION

We reverse the BAP's decision and remand the case to it to be remanded to the

---

**3.** Along with the lack of full development before the bankruptcy court, we were provided only excerpts from exhibits 38 to 50.

bankruptcy court so that it may determine whether, if the tax returns are taken into account, Nordstrom was an alter ego of IIU and IIUW. If the bankruptcy court decides that Nordstrom was an alter ego, Weule's state court judgment should be found to be a nondischarageable debt under § 523(a)(6).

REVERSED and REMANDED.