FILED

MAR 14 2023

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>NEAL JONES and AMY JONES,<br>　　　　　　Debtors. | BAP No. AZ-21-1203-FLS<br>BAP No. AZ-22-1104-FLS<br>(Related Appeals) |
| NEAL JONES,<br>　　　　　　Appellant,<br>v.<br>RUCHIR PATEL,<br>　　　　　　Appellee. | Bk. No. 4:15-bk-00508-BMW<br><br>Adv. No. 4:15-ap-00283-BMW |
| NEAL JONES; AMY JONES,<br>　　　　　　Appellants,<br>v.<br>RUCHIR PATEL,<br>　　　　　　Appellee. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Arizona
Brenda Moody Whinery, Bankruptcy Judge, Presiding

Before: FARIS, LAFFERTY, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Dr. Neal Jones hired Dr. Ruchir Patel to work at his incorporated

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

orthodontic practice in Illinois. Shortly thereafter, Dr. Jones relocated to Arizona and directed the corporation's business manager to withhold Dr. Patel's salary. Dr. Patel eventually obtained an Illinois state court judgment against Dr. Jones and the corporation for unpaid wages.

Dr. Jones and his wife, Amy Jones, filed for chapter 7[1] bankruptcy protection in Arizona, and Dr. Patel sought to have the Illinois judgment declared nondischargeable. After a trial, the bankruptcy court denied discharge of the judgment debt under § 523(a)(6). It held that the judgment was enforceable against the Joneses' community property and that the Illinois state interest rate, rather than the federal rate, applied to the judgment.

In these related appeals, Dr. Jones argues that the bankruptcy court erred by finding that he intended to injure Dr. Patel and did so without just cause or excuse. The Joneses also argue that the court erred in holding that the Illinois judgment is enforceable against the marital community and accrues interest at the Illinois state rate.

All of the Joneses' arguments are meritless. We AFFIRM.

## FACTS

### A.    Dr. Patel's employment at Dr. Jones' orthodontic practice

Dr. Patel entered into a two-year employment agreement with Sauk

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

Valley Orthodontics, P.C. ("SVO"), a corporation owned by Dr. Jones in Illinois.[2] SVO agreed to pay Dr. Patel a monthly salary and did not condition his compensation on the corporation's cashflow.

Around the time Dr. Patel began working at SVO, Dr. Jones relocated from Illinois (which is not a community property state) to Arizona (which is a community property state) and set up an orthodontic practice under two entities. Dr. Patel became SVO's sole practicing orthodontist.

About a year and a half into Dr. Patel's employment, SVO fell behind on Dr. Patel's monthly compensation. Although Dr. Patel was "begging" to be paid, Dr. Jones directed Michael Squires – SVO's accountant and the person largely responsible for office management at Dr. Jones' direction – to withhold payment to Dr. Patel and instead pay SVO's other debts and obligations.

In an e-mail to Mr. Squires dated March 21, 2013, Dr. Jones stated that SVO would not pay Dr. Patel in full before the end of his employment term, so Dr. Patel was "trapped into playing along [with] us." In the same e-mail, Dr. Jones directed Mr. Squires to withhold payment to Dr. Patel:

> [C]ontinue to not pay his full monthly salary; without communicating this to him, pay him relative to collections; we can select some figure that allows us to keep paying everyone else, grow a reserve, and stay afloat; don't budge on [this] position; when [Dr. Patel] is motivated to be paid more (including to get his back pay), he'll help the office do better;

[2] At the time the parties entered into the agreement, the business was known as Neal Jones, D.D.S., M.S., P.C., an Illinois Corporation.

pay [Dr. Patel] less, not more until things get better; ensure creditors are paid, but not [Dr. Patel]; [Dr. Patel] will likely change his attitude and behavior (major source of SVO's problems) when he gets less pay, not more . . . .

In later e-mails, Dr. Jones told Mr. Squires: "You must be paid, I must be paid, the [office staff] must be paid, the suppliers must be paid, and the creditors must be paid[;]" and "I've learned that [Dr. Patel] unless [sic] has to fear something (generates motivation) or he'll continue being apathetic." Mr. Squires followed Dr. Jones' direction and did not pay Dr. Patel timely or in full. Dr. Patel ceased working at SVO in September 2013.

## B.    The Illinois litigation and judgment

After SVO defaulted in making payments under a mediated resolution, Dr. Patel obtained an arbitration award against Dr. Jones and SVO for $68,455. The Illinois state court confirmed the award and entered a judgment against Dr. Jones and SVO for $73,254 (the "Illinois Judgment").[3] Shortly thereafter, SVO ceased operations.

## C.    The Joneses' bankruptcy proceedings

On January 20, 2015, Dr. Jones and Mrs. Jones filed a joint chapter 7 petition in the District of Arizona. The Joneses scheduled the Illinois Judgment and described the debt as a non-contingent, liquidated, undisputed community obligation.

---

[3] The parties agree that the Illinois Judgment is a final judgment entitled to full faith and credit.

4

Dr. Patel filed an adversary complaint against Dr. Jones, seeking to deny discharge and have the Illinois Judgment declared nondischargeable under §§ 523(a)(2)(A), (a)(4), and (a)(6). Dr. Patel later filed the operative amended complaint that sought judgment against both Dr. Jones and "the community composed of Neal LeBaron Jones and Amy Melissa Jones." He alleged that Dr. Jones' actions "were undertaken on behalf of the community of Neal LeBaron Jones and Amy Melissa Jones and [the debt] is therefore a community obligation."

In his answer to the complaint, Dr. Jones admitted that all of the conduct alleged in the adversary complaint was undertaken on behalf of the marital community and that the debt was therefore a community obligation.

The Joneses moved to dismiss the amended complaint. Among other things, they argued that Mrs. Jones should be dismissed with prejudice. The court granted the motion as to the § 727(a) claim and all claims against Mrs. Jones. The order did not address the claims against the "community" of Dr. Jones and Mrs. Jones.

### 1.    The trial on the nondischargeability claims

The bankruptcy court held a two-day trial on Dr. Patel's amended complaint. Mr. Squires, Dr. Patel, and Dr. Jones testified.

Mr. Squires testified about SVO's operations and financial affairs. He read e-mails into the record, including the e-mail in which Dr. Jones stated

that "we have [Dr. Patel] trapped into playing along with us."[4] Dr. Jones' counsel did not ask Dr. Jones any questions about the e-mails; at oral argument before this Panel, counsel explained that he made a tactical judgment not to highlight the e-mails.

Dr. Jones testified that he did not intend to harm Dr. Patel. Rather, he explained that he, SVO, and Mr. Squires tried their best to pay everyone, but they had many expenses and Dr. Patel "was the one that had the biggest expenditure."

### 2.    The nondischargeability ruling

On September 1, 2021, the bankruptcy court issued its memorandum decision holding that the Illinois Judgment was nondischargeable. It addressed only the § 523(a)(6) claim: whether the Illinois Judgment was a debt for willful and malicious injury. It stated that, under *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1205 (9th Cir. 2001), a debt is nondischargeable if (1) the debtor's conduct was tortious under state law; and (2) the debtor's conduct was both willful and malicious.

First, the bankruptcy court held that Dr. Jones' conduct was tortious under Illinois law. It considered the five-part test for the tort of intentional interference with a contract laid out in *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 545 N.E. 2d 672, 676 (Ill. 1989). In particular, the court discussed the third prong: "the defendant's intentional and unjustified

---

[4] Dr. Jones initially objected to the admission of the e-mails, including the "trapped" e-mail. He later withdrew his objection.

inducement of a breach of contract." The court referenced Dr. Jones'

written communication and found that he "intended to induce SVO to

breach the Agreement. Dr. Jones expressly and unambiguously instructed

Mr. Squires, acting on behalf of SVO, to withhold wages to Dr. Patel, which

wages Dr. Jones knew were due and owing under the agreement." It

further stated that Dr. Jones' actions were unjustifiable:

> Dr. Jones's intentional inducement was unjustifiable given that Dr. Jones induced SVO to breach the Agreement for the primary purpose of causing injury to Dr. Patel. In the March 2013 Directives, Dr. Jones explicitly directed Mr. Squires to withhold wages from Dr. Patel, while continuing to pay the other debts of SVO, in order to cause financial injury to Dr. Patel, whereby [sic] generating "fear" and/or "motivation." Although Dr. Jones suggests that his conduct was justified because it was guided by his business judgment and was dictated by the inability of SVO to make the agreed-upon payments to Dr. Patel, Dr. Jones's actions were contrary to the best interests of SVO, and any alleged inability of SVO to pay Dr. Patel pursuant to the Agreement is unpersuasive. During the period of time during which SVO was, at Dr. Jones's direction, withholding Dr. Patel's wages, Dr. Jones was withdrawing funds from SVO for his own benefit, including in the form of distributions and loans, and directing SVO to pay costs related to such things as his personal vacation timeshare.

The bankruptcy court found that "SVO breached the Agreement as a direct

result of Dr. Jones's wrongful conduct."

The bankruptcy court next considered whether the injury was

"willful." It found both that Dr. Jones had a subjective motive to injure

7

Dr. Patel and that he believed injury was substantially certain to occur as a result of his actions. The evidence established "a deliberate and malicious pattern of conduct aimed at inflicting willful injury upon and causing economic distress to Dr. Patel." The court found that "Dr. Jones took steps to 'trap' Dr. Patel into continuing to perform services for SVO without being paid pursuant to the terms of the Agreement, all the while continuing to siphon funds out of SVO for his personal benefit."

Finally, the bankruptcy court considered whether the injury was malicious. It concluded that "Dr. Jones fraudulently engaged in wrongful conduct by intentionally inducing SVO to repeatedly breach the terms of the Agreement, Dr. Jones's conduct was unjustified, and Dr. Jones's wrongful conduct caused injury to Dr. Patel." Based on "the entire record before the Court," it determined that Dr. Jones acted with malice.

The bankruptcy court entered judgment in favor of Dr. Patel on the § 523(a)(6) claim ("Nondischargeability Judgment"). It ordered "that interest shall accrue on this Judgment at the rate specified in 28 U.S.C. § 1961 from entry of this Judgment, until paid."

Dr. Jones timely appealed the Nondischargeability Judgment.

### 3.    Dr. Patel's postjudgment motions

Dr. Patel filed two motions after the bankruptcy court entered the Nondischargeability Judgment.

In his first motion, Dr. Patel sought fees and costs and clarification that the Nondischargeability Judgment did not alter his right to recover

8

postjudgment interest on the Illinois Judgment under Illinois statute. The bankruptcy court granted this motion, concluding that the Nondischargeability Judgment only determined dischargeability and did "not establish the amount of the debt or constitute a new money judgment under federal law sufficient to trigger 28 U.S.C. § 1961." Accordingly, Dr. Patel was entitled to postjudgment interest at the Illinois statutory rate.

In his second motion, Dr. Patel sought a declaratory judgment that the Joneses' marital community was liable for the Illinois Judgment. The court granted this motion for two reasons. First, the court noted that the Joneses admitted in their bankruptcy schedules that the Illinois Judgment was a community debt, and Dr. Jones admitted in his answer to the complaint in the adversary proceeding that all of his actions were done for the benefit of the community. Second, even putting aside the admissions, the bankruptcy court held that the debt is a community obligation under Arizona state law. It applied the Arizona standard that "[d]ebt incurred by one spouse while acting for the benefit of the marital community is a community obligation whether or not the other spouse approves it." *Lorenz-Auxier Fin. Grp., Inc. v. Bidewell*, 772 P.2d 41, 43 (Ariz. Ct. App. 1989). The court found that Dr. Jones was the primary source of income for his family and the debt was incurred for the benefit of Dr. Jones and his family.

The bankruptcy court held that it did not matter that Mrs. Jones was not joined in the Illinois proceedings. It relied on *Gagan v. Sharar*, 376 F.3d 987 (9th Cir. 2004), and held that Arizona Revised Statutes ("ARS") § 25-

9

215(D) does not mandate that joinder is an absolute prerequisite to an execution of community property. It rejected the Joneses' argument that Mrs. Jones had not received due process, because she had an opportunity to participate in the adversary proceeding but had moved the court to dismiss her from it.

Finally, the bankruptcy court held that, "because the debt is nondischargeable, and because the debt is a community debt under applicable state law, pursuant to § 524(a)(3) of the Bankruptcy Code, the Community does not receive the benefit of the Chapter 7 discharge as to the debt at issue."

The bankruptcy court entered an amended judgment ("Amended Judgment"). It ordered that the Illinois Judgment and any interest under Illinois state law are nondischargeable under § 523(a)(6). It further ordered that "this Judgment is enforceable against the marital community of Neal LeBaron Jones and Amy Melissa Jones."

The Joneses timely appealed the Amended Judgment.[5]

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

---

[5] Dr. Patel filed a motion to supplement the record on appeal to include documents filed in the Joneses' subsequent chapter 11 case. We DENY his motion: the events in the post-appeal chapter 11 case were not before the bankruptcy court when it ruled, and they have no bearing on any issue in these appeals.

**ISSUES**

1.      Whether the bankruptcy court erred in finding that Dr. Jones acted intentionally and without just cause or excuse.

2.      Whether the bankruptcy court erred in holding that the Illinois Judgment was nondischargeable as to the Joneses' marital community.

3.      Whether the bankruptcy court erred in holding that postjudgment interest on the Illinois Judgment accrues at the Illinois statutory rate, rather than the federal rate.

**STANDARDS OF REVIEW**

We review de novo the bankruptcy court's legal conclusions, including its construction of § 523(a)(6). *Hamilton v. Elite of L.A., Inc. (In re Hamilton)*, 584 B.R. 310, 318 (9th Cir. BAP 2018), *aff'd*, 785 F. App'x 438 (9th Cir. 2019). Additionally, "[w]hether an appellant's due process rights were violated is a question of law we review de novo." *DeLuca v. Seare (In re Seare)*, 515 B.R. 599, 615 (9th Cir. BAP 2014). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

We review the bankruptcy court's factual findings for clear error. *In re Hamilton*, 584 B.R. at 318. Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). If two views of the evidence are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985).

11

When considering the "malicious" prong of § 523(a)(6)'s "willful and malicious" inquiry, the Ninth Circuit has instructed that

> [t]he first three elements . . . of "malicious" are all questions of fact which we review for clear error. The fourth element, "just cause or excuse," however, presents a mixed question of law and fact. A mixed question of law and fact occurs when the historical facts are established; the rule of law is undisputed, i.e., "just cause or excuse"; and the issue is whether the facts satisfy the legal rule.

*Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791-92 (9th Cir. 1997) (en banc). Such mixed questions are reviewed de novo: "The question of whether a cause is 'just' is a textbook example of a legal conclusion informed by historical facts." *Id.* at 792.

Nevertheless, the parties agree that determinations that are primarily fact-based are entitled to clear error review. The United States Supreme Court has clarified that some

> mixed questions immerse courts in case-specific factual issues—compelling them to marshal and weigh evidence, make credibility judgments, and otherwise address what we have . . . called "multifarious, fleeting, special, narrow facts that utterly resist generalization." And when that is so, appellate courts should usually review a decision with deference. In short, the standard of review for a mixed question all depends—on whether answering it entails primarily legal or factual work.

*U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 967 (2018) (citations omitted) (holding that, where a determination depends on the "historical facts," the finding "rests with a

bankruptcy court, subject only to review for clear error"). Thus, we apply the clear error standard to the arguments that the bankruptcy court ignored or misinterpreted evidence regarding factual questions such as the status of SVO's finances, payments to Dr. Patel, and Dr. Jones' intent.

## DISCUSSION

**A.     The bankruptcy court did not err in determining that the Illinois Judgment was nondischargeable under § 523(a)(6).**

Dr. Jones argues that the bankruptcy court erred in holding that the Illinois Judgment was a debt for willful and malicious injury excepted from discharge under § 523(a)(6). He limits his arguments to three discrete points: (1) due process as to a single e-mail; (2) SVO's financial problems as a just cause or excuse for harming Dr. Patel; and (3) Dr. Jones' lack of intent to harm Dr. Patel. We reject these arguments.

Section 523(a)(6) excepts from discharge any debt arising from "willful and malicious injury by the debtor to another entity or to the property of another entity[.]" The creditor must prove both willfulness and malice. *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010). "Under Ninth Circuit law, willfulness and malice are two distinct elements that must not be conflated." *Comcast of L.A., Inc. v. Sandoval (In re Sandoval)*, 341 B.R. 282, 296 (Bankr. C.D. Cal. 2006).

The "willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Carrillo v. Su (In re*

13

*Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002); *see Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008) ("A 'willful' injury is a 'deliberate or intentional **injury**, not merely a deliberate or intentional **act** that leads to injury.'" (citation omitted)). This analysis requires an inquiry into the debtor's subjective state of mind. *See In re Su*, 290 F.3d at 1145-46. In other words, it is not enough to prove that the debtor acted intentionally and caused an injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

"A 'malicious' injury involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *In re Jercich*, 238 F.3d at 1209 (quoting *In re Bammer*, 131 F.3d at 791).

Where, as here, the underlying injury stems from an alleged breach of contract, the debt is only nondischargeable if the "intentional breach of contract is accompanied by tortious conduct which results in willful and malicious injury . . . ." *Id.* at 1205. In other words, a bankruptcy court must "undert[ake] a two-part inquiry to determine whether the breach of contract rendered the debt excepted from discharge, first examining whether the debtor's conduct was 'tortious,' and then asking whether the debtor's conduct was both 'willful' and 'malicious.'" *Lockerby v. Sierra*, 535 F.3d 1038, 1040-41 (9th Cir. 2008).

As noted above, Dr. Jones does not challenge the bankruptcy court's determinations that his conduct was tortious or that the injury was "willful." He only challenges the bankruptcy court's ruling that the injury

14

was "malicious."

**1.    Dr. Jones was not denied due process as to the "trapped" e-mail.**

First, Dr. Jones argues that he did not have notice and opportunity to be heard on the issue of malice. He contends that the court's determination was based "primarily" on the March 21, 2013 e-mail in which he told Mr. Squires that he and SVO had Dr. Patel "trapped." He complains that he was denied due process because counsel and the court did not examine him on the meaning of his "trapped" statement.

Dr. Jones' arguments are misguided at best. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (cleaned up). The bankruptcy court did not preclude Dr. Jones from testifying as to the e-mail or any other matter related to "malice." The record shows that Dr. Jones was afforded both notice and an opportunity to be heard: as the Joneses concede, the March 21, 2013 e-mail was included in the parties' exhibit list and admitted at trial without objection; Mr. Squires read the e-mail into the record; and Dr. Jones' counsel had the opportunity to question Dr. Jones about the e-mail but chose not to.

There is no basis for Dr. Jones' suggestion that the court or Dr. Patel's counsel somehow had an obligation to ask Dr. Jones about the e-mail. The court never has an obligation to ask any questions of any witness. Dr. Patel's lawyer had no duty to help his adversary explain away a

15

damning piece of evidence. At oral argument, Dr. Jones' counsel candidly admitted that he made a tactical decision not to ask Dr. Jones about the e-mail. Dr. Patel's counsel was entitled to make a similar tactical decision that it was best to let the e-mail speak for itself.

Dr. Jones implies that the bankruptcy court should have indicated in advance that it would rely on the e-mail to support one of its findings. He offers no authority for the novel proposition that the bankruptcy court had any such obligation to give a preview of its ruling.

Additionally, even if the bankruptcy court did deny Dr. Jones due process as to his "trapped" statement (and it did not), the court based its finding of malice on a host of other evidence. For example, the court cited other correspondence between Dr. Jones and Mr. Squires, including the "directives" to pay all other debts and employees except for Dr. Patel; Dr. Jones' stated intent to make Dr. Patel experience "fear" and "motivation"; and the withholding of payment to Dr. Patel while Dr. Jones took money for himself. Even ignoring the March 21, 2013 e-mail, there was ample evidence to support a finding of malice.

2. **The bankruptcy court's determination that there was no "just cause or excuse" was not error.**

Second, Dr. Jones contends that the bankruptcy court erred in ruling that there was no just cause or excuse for breaching the employment agreement. He argues that the breach of contract was justified due to SVO's diminished cashflow.

16

The bankruptcy court considered the extensive evidence concerning SVO's finances and operations, and in particular Mr. Squires' testimony. It found that SVO had trouble collecting its accounts receivable even prior to Dr. Patel's employment; that Dr. Jones directed Mr. Squires to pay down Dr. Jones' credit card debt rather than Dr. Patel's salary; that Dr. Jones said that they had "trapped" Dr. Patel into working for late, reduced, or no payment; that Dr. Jones instructed Mr. Squires to pay all office staff, Dr. Jones, and Mr. Squires, but not Dr. Patel; that Dr. Jones implied that they needed to instill "fear" in Dr. Patel; that, during the time that Dr. Patel was not paid his full wages, Dr. Jones received distributions and loans from SVO, made contributions to his retirement accounts, and was still receiving a monthly salary for "orthodontic services" from SVO, even though he was no longer practicing in Illinois; and that SVO had cash on hand at the end of 2011, 2012, and 2013. Based on these detailed findings, the bankruptcy court found Dr. Jones' position unpersuasive.

We discern no error. The bankruptcy court considered Dr. Jones' arguments that his actions were justified because SVO was simply unable to pay Dr. Patel. Based on the evidence, it found that SVO was able to pay Dr. Patel and that Dr. Jones was not acting in SVO's best interest. The court's findings were not "illogical, implausible, or without support in the record." *See In re Retz*, 606 F.3d at 1196.[6]

_____

[6] Dr. Jones suggests that his explanation about SVO's finances must be believed because the bankruptcy court did not find him uncredible. But the court was not

### 3. The bankruptcy court's findings of intent and injury were not clearly erroneous.

Third, Dr. Jones argues that the record does not support a finding that he intended to harm Dr. Patel. He points out that SVO paid Dr. Patel in part after the "trapped" e-mail and implies that only a "zero dollar figure" would support a "true intent to harm" Dr. Patel.

In the first place, Dr. Jones ignores the difference between willfulness and malice. This is important because Dr. Jones only contests the bankruptcy court's finding of malice, and not willfulness. Willfulness requires a finding of intent to injure (or subjective knowledge that one's conduct is substantially certain to inflict injury). In contrast, malice does not require an intent to cause an injury, only an intent to do a wrongful act, which then results in injury. *In re Bammer*, 131 F.3d at 791 (Malice "does *not* require a showing of biblical malice, i.e., personal hatred, spite, or ill-will. Nor does it require a showing of an intent to injure, but rather it requires only an intentional act which causes injury." (citations omitted)). Dr. Jones does not dispute that he intentionally directed Mr. Squires to cause SVO to breach the employment agreement by withholding Dr. Patel's compensation. This is enough to support a finding of malice.

Further, we reject the argument that there was no injury because SVO paid part of Dr. Patel's salary. It is true that Dr. Jones could have caused

---

required to make explicit credibility findings. The court's decision leaves us with no doubt that it weighed the evidence and did not believe Dr. Jones' version of events.

SVO to withhold all of Dr. Patel's salary, but the fact Dr. Jones could have inflicted even more injury on Dr. Patel is no defense. Therefore, the bankruptcy court did not err in finding that the injury was malicious and otherwise satisfied the nondischargeability standard under § 523(a)(6).[7]

## B. The bankruptcy court correctly held that the Illinois Judgment is nondischargeable as to the marital community.

The Joneses argue that the bankruptcy court erred as a matter of law in concluding that the Nondischargeability Judgment was applicable to the marital community, not just Dr. Jones. They contend that, after they initiated the appeal, the Arizona Supreme Court issued a decision dispositive of this issue that is at odds with the bankruptcy court's decision. The Joneses misrepresent both the content and the timing of the supreme court's decision.

As the bankruptcy court noted, Arizona is a community property state, while Illinois is not. ARS § 25-215 provides:

> C. **The community property is liable for a spouse's debts incurred outside of this state during the marriage which would have been community debts if incurred in this state.**

> D. Except as prohibited in § 25-214, either spouse may contract debts and otherwise act for the benefit of the community. **In an action on such a debt or obligation the spouses shall be sued jointly** and the debt or obligation shall be satisfied: first, from the community property, and second, from the separate

---

[7] The evidence supporting the court's decision is so overwhelming that we would affirm even on de novo review.

property of the spouse contracting the debt or obligation.

Ariz. Rev. Stat. § 25-215 (emphases added).

Thus, ARS § 25-215(C) provides that the Joneses' marital community is liable for Dr. Jones' debt incurred outside of Arizona, if it would have been community debt under Arizona law. The bankruptcy court found that the Illinois Judgment was a community debt under Arizona law because it was incurred for the benefit of Mrs. Jones and the Jones family. The Joneses do not challenge this determination on appeal.

Rather, the Joneses focus their argument on ARS § 25-215(D). They maintain that the Illinois Judgment is ineffective in Arizona, because Mrs. Jones was not joined in the Illinois proceedings. We disagree.

The bankruptcy court correctly relied on *Gagan*. In that case, the Ninth Circuit examined Arizona precedent including *Oyakawa v. Gillett*, 854 P.2d 1212, 1218 (Ariz. Ct. App. 1993), and *National Union Fire Insurance Co. v. Greene*, 985 P.2d 590, 595 (Ariz. Ct. App. 1999), and held that a creditor could enforce an Indiana federal court judgment against the debtor's marital property in Arizona, even though the debtor's spouse was not named in the Indiana proceeding. The Ninth Circuit also held, however, "that a non-party spouse must be given an opportunity at some time to challenge enforcement of a judgment against community property in Arizona." *Gagan*, 376 F.3d at 992.

We agree with the bankruptcy court that *Gagan* is on point and that the Illinois Judgment was applicable to the Joneses' marital community in

20

Arizona, in spite of ARS § 25-215(D). We also agree that Mrs. Jones had an opportunity to challenge enforcement of the Illinois Judgment because she had notice of and an opportunity to participate in the adversary proceeding, but she actively sought to be dismissed from the case.

We are not persuaded by the Joneses' argument on appeal, that the Arizona Supreme Court's decision in *Lattin v. Shamrock Materials, LLC*, 503 P.3d 116 (Ariz. 2022), effectively overruled *Gagan*. Ms. Lattin sued Shamrock and lost. The court awarded Shamrock attorneys' fees against Ms. Lattin, but not her husband. When Shamrock sought to garnish the couple's joint bank account, the trial court quashed the garnishment, because Ms. Lattin's husband was not named in the judgment. The Arizona Supreme Court held that the trial court should have allowed the garnishment. It held that "seeking an award of attorney fees for the successful defense of a complaint filed by a married plaintiff is not an 'action on [a community] debt or obligation' under § 25-215(D)." 503 P.3d at 119. The court also held:

> If the court enters a judgment for attorney fees and costs in favor of the defendant, the plaintiff's spouse **may** intervene in any subsequent attempt to execute the judgment against community assets to argue the judgment is the plaintiff's sole and separate obligation, and community assets cannot be used to satisfy the judgment.

*Id.* at 120 (emphasis added).

*Lattin* is readily distinguishable from the present case. In the first

place, unlike in *Gagan*, there was no foreign judgment in *Lattin*. The Arizona Supreme Court did not address the full faith and credit due to foreign judgments or otherwise overrule *Oyakawa*, *Greene*, or *Gagan*.[8]

In the second place, *Lattin* only holds that the non-party spouse is entitled to intervene in the enforcement action against the community property. The Arizona Supreme Court held that Ms. Lattin's husband did **not** have to be joined in the proceeding that led to the judgment. If anything, *Lattin* merely stands for the proposition that Mrs. Jones had the right to participate in the adversary proceeding if she chose to do so. As the bankruptcy court correctly held, Mrs. Jones was not denied that right; she explicitly turned down the opportunity to participate when she sought dismissal from the case.

Furthermore, the Joneses fail to address the bankruptcy court's other reason for holding that that the marital community was liable for the Illinois Judgment: that the Joneses had admitted as much in the answer to the complaint and their bankruptcy filings. The Ninth Circuit has acknowledged that "[j]udicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. Judicial admissions

---

[8] Additionally, *Lattin* was published in February 2022, three months prior to the bankruptcy court's May 2022 Amended Judgment. Thus, it is disingenuous to suggest that this is a "new" decision that could not have been raised before the bankruptcy court.

are conclusively binding on the party who made them." *Spokane Law Enf't Fed. Credit Union v. Barker (In re Barker)*, 839 F.3d 1189, 1195 (9th Cir. 2016) (cleaned up).

As the bankruptcy court explained, the Joneses were bound by their admissions: (1) the designation of the Illinois Judgment as a community obligation in the Joneses' schedules and (2) Dr. Jones' answer to the amended complaint that admitted that all actions were undertaken on behalf of the community and that the debt is a community obligation. The Ninth Circuit has "never declared that a bankruptcy schedule constitutes the 'formal admission' required for the application of the doctrine[,]" *id.* at 1195-96, but there is no doubt that an assertion in an answer meets that requirement.

## C. The bankruptcy court correctly held that the Nondischargeability Judgment does not change the rate of interest on the Illinois Judgment.

The Joneses also appeal the bankruptcy court's determination that the Illinois Judgment continues to accrue interest at the Illinois statutory rate, as opposed to the lower federal rate. They are wrong. As we held in *Hamilton*, "interest on a nondischargeable judgment debt should continue to accrue at the state rate, even after the bankruptcy court determines the nondischargeability of the debt." 584 B.R. at 323. We concluded that "[t]he Nondischargeability Judgment was not a new money judgment under federal law. It simply determined that the State Court Judgment was not

23

dischargeable. As such, the bankruptcy court lacked authority to override the state court's award of interest." *Id.* The Ninth Circuit affirmed our ruling. 785 F. App'x at 439.

This case compels the same result. Neither the Nondischargeability Judgment nor the Amended Judgment created a new money judgment or altered Dr. Patel's rights under the Illinois Judgment.

The Joneses completely ignore *Hamilton* and instead rely exclusively on *Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231 (9th Cir. 2002). But *Cardelucci* has no bearing on the present appeal. In that case, the Ninth Circuit considered the meaning of "interest at the legal rate" within § 726(a)(5) for the purposes of **distribution** to an unsecured creditor holding a state court judgment debt. *See id.* at 1234. That case has nothing to do with a nondischargeability judgment.

## D. We deny Dr. Patel's request for fees and other sanctions.

In both appeals, Dr. Patel requests that we summarily affirm the bankruptcy court's decisions or impose sanctions against the Joneses for incomplete briefs and excerpts that do not comply with the applicable BAP rules. Although we agree that the Joneses' submissions are lacking, we are able to understand the arguments and record on appeal. Further, Dr. Patel did not file a separate motion seeking fees for a frivolous appeal as Rule 8020(a) requires. Therefore, we DENY his request for summary affirmance or sanctions.

Dr. Patel urges us to award him his fees and costs under the Illinois

24

Wage Payment Act, 820 Ill. Comp. Stat. § 115/14. However, he provides us with no argument or authority that he is entitled to recover fees and costs in this bankruptcy appeal under that statute. We deny his request without prejudice, and we express no opinion on his entitlement to fees or costs under the Illinois statute.

## CONCLUSION

The bankruptcy court did not err in holding that the Illinois Judgment was nondischargeable under § 523(a)(6), is enforceable against the marital community, and accrues interest at the Illinois statutory rate. We AFFIRM.